NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0585n.06

No. 08-4717

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 19, 2009
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| RODOLFO GALICIA DEL VALLE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | PETITION FOR REVIEW OF ORDER OF |
| | ) | BOARD OF IMMIGRATION APPEALS |
| ERIC H. HOLDER, JR., | ) | |
| Attorney General of the United States, | ) | |
| | ) | |
| Respondent. | ) | |

BEFORE:   KEITH, SUTTON, and WHITE, Circuit Judges.

KEITH, Circuit Judge. Petitioner Rodolfo Galicia Del Valle ("Galicia") seeks this Court's review of an order from the Board of Immigration Appeals ("BIA"), denying his application for asylum, withholding of removal, and cancellation of removal. For the following reasons, we **DENY** the petition for review and **AFFIRM** the BIA's decision.

**I.**

**A. Procedural Summary**

On May 19, 2006, the Department of Justice served Galicia with a Notice to Appear, charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i). Joint Appendix ("J.A.") 91. On June 14, 2006, he appeared before the Immigration Judge ("IJ") and conceded removability. Administrative Record ("A.R.") 88. That same day, Galicia indicated that he wished to seek relief

from removal through asylum, withholding of removal, and cancellation of removal under the Immigration and Nationality Act.[1]

On June 11, 2007, Galicia appeared with counsel before the IJ in an evidentiary hearing and testified with the help of a Spanish interpreter. J.A. 28. Galicia's church pastor also testified at the hearing. J.A. 53. During the proceedings, Galicia requested voluntary departure in the event of removal. J.A. 70

An oral decision was rendered the day of the hearing. The IJ denied Galicia's applications for asylum, withholding of removal and cancellation of removal but granted him voluntary departure. J.A. 26. Galicia timely appealed the IJ's decision and the BIA dismissed the appeal in an order and opinion dated December 5, 2008. J.A. 3-5. The instant petition for review timely followed on December 23, 2008. J.A. 1.

## B. Removal Proceeding

Galicia is a native and citizen of Guatemala who was 33 years old at the time of his evidentiary hearing before the IJ on June 11, 2007. J.A. 32. According to testimony found credible by the IJ, Galicia fled Guatemala and entered the United States in 1993, at the age of nineteen. J.A. 14, 32-33. He left the country due to his fear of Guatemalan guerrillas, who were engaged in civil war with the national government. *See* J.A. 32-33.

Galicia testified that prior to his departure from Guatemala, guerrillas threatened to kill him and his family if they did not join the rebel cause. J.A. 33. He noted that "many" people in his area

---

[1]The record indicates that Galicia also sought at some point relief under the Convention Against Torture. J.A. 4. He appears to have abandoned this claim prior to his immigration hearing and has not raised the issue in the instant appeal. J.A. 29-30.

had disappeared or left after resisting guerrilla recruitment. *Id.* Galicia suspected that some of those individuals were harmed by the guerrillas. *Id.* Galicia also testified that his grandfather was beaten by the guerrillas and suffered severe injuries because of his refusal to support them. J.A. 33-34. According to Galicia, these injuries ultimately resulted in his grandfather's death. J.A. 34. Galicia feared returning to Guatemala because he believed that guerrillas remained in the area and were aware that he had fled the country. *Id.* Galicia's parents, as well as seven of his siblings, continue to live in Guatemala. J.A. 45.

At the time of his immigration hearing, Galacia lived in Horn Lake, Mississippi, with his wife and their three year old daughter, Kayla Rosio ("Kayla"). J.A. 35-36. Kayla was born in the United States. J.A. 35. Galicia's wife, Rosio Kalisa ("Rosio"), is a Mexican national without legal status in the United States. *Id.* Galicia testified to his belief that his wife would not be able to accompany him to Guatemala because of her Mexican citizenship. J.A. 41. He also asserted that he could not live with her in Mexico. J.A. 42. Galicia testified that he, his wife, and Kayla were in good health at the time of his hearing. J.A. 47-48.

Rosio cared for Kayla at home but Galicia testified they planned to send Kayla to preschool in the upcoming school year. J.A. 38. Kayla speaks both English and Spanish. *Id.* Galicia claimed that Kayla would not be safe in Guatemala and that she would suffer from diminished educational opportunities there. J.A. 43. According to the 2005 United States Department of State Country Report on Human Rights Practices in Guatemala ("State Department Report"), included as part of the administrative record, while Guatemalan law "provides for free compulsory education for all children up to the sixth grade, less than half the population had received a primary education." J.A.

84. The report estimated "that 40 percent of children who entered primary school finished their third year and 30 percent were promoted beyond sixth grade." *Id.*

Galicia is self-employed as a licensed painter. J.A. 40. Galicia testified he received only a fourth-grade education in Guatemala and contended it would be "very difficult" to find work if removed to his native country. J.A. 40, 43. He specifically denied the possibility of working on his family's farm, although he acknowledged doing so before he left Guatemala. J.A. 47.

### C. The IJ's Decision

As mentioned above, the IJ issued an order on June 11, 2007, denying Galicia's applications for asylum, withholding of removal, and cancellation of removal. J.A. 10. With respect to the asylum claim, the IJ determined that Galicia, notwithstanding his credibility, failed to present sufficient objective evidence to establish past persecution. J.A. 18. Specifically, the IJ found that "vague testimony that [guerrillas] attempted to recruit" Galicia did not constitute "persecution" under 8 U.S.C. § 1101(a)(42)(A). J.A. 19. The IJ further ruled that Galicia "failed to demonstrate a well-founded fear of persecution on account of any of the protected grounds." *Id.*

Relying on *INS v. Elias-Zacharias*, 502 U.S. 478 (1992), the IJ explained that "recruitment of an individual by a guerrilla organization, is not, in and of itself, persecution on account of political opinion." *Id.* Galicia's argument that he was persecuted based on membership in a social group consisting of those targeted by the guerrillas was rejected because it was found to be inherently circular and failed to account for the cessation of guerilla activity in the country following the end of the civil war. J.A. 20. Finally, the IJ maintained that nothing in the record indicated that the widespread societal crime occurring in Guatemala was "directed at persons who used to be

neutral in the civil war, or who resisted the blandishments of the guerrillas." J.A. 21. For these reasons, Galicia's asylum application was denied. His application for withholding of removal was also denied because of Galicia's failure to demonstrate a "clear probability" of persecution on account of a protected ground. J.A. 22.

The IJ further denied Galicia cancellation of removal because he found that Galicia's removal would not result in "exceptional and extremely unusual hardship" to his U.S. citizen daughter, Kayla. J.A. 22-23. In reaching this conclusion, the IJ found that Galicia's wife, Rosio, a Mexican national, could accompany the family to Guatemala and care for Kayla. J.A. 24. The IJ emphasized that Galicia had extensive family in Guatemala and that he could secure employment on his father's farm as he had before he left Guatemala. J.A. 25. It was further established that although Kayla would likely receive "diminished educational opportunity" in Guatemala, she still would not suffer "exceptional and extremely unusual hardship" under *In re Andazola-Rivas*, 23 I. & N. Dec. 319, 323 (BIA 2002). J.A. 25-26.

The IJ concluded his opinion by granting Galicia's request for voluntary departure. J.A. 26.

### D. The BIA's Decision

On December 5, 2008, the BIA dismissed Galicia's appeal on all grounds. J.A. 3-4. First, it adopted and affirmed the IJ's determination that Galicia had not demonstrated a well-founded fear of persecution. J.A. 3. The BIA specifically agreed that attempted conscription by the guerrillas did not constitute persecution on account of a protected ground under *Elias-Zacharias*, 502 U.S. 478. J.A. 3. The BIA further noted that the beating of Galicia's grandfather did not establish persecution of Galicia. *Id.* Given the absence of past persecution, the BIA also denied Galicia

humanitarian asylum relief pursuant to *In re Chen*, 20 I. & N. Dec. 16 (BIA 1989). To the extent the presumption of a well-founded fear of persecution existed due to past persecution, the BIA found that conditions in Guatemala had significantly changed for the better since Galicia left the country. *See* J.A. 3. As a result, the BIA concluded that Galicia was not eligible for asylum, nor for withholding of removal due to its more stringent "clear probability of persecution" standard. *See* J.A. 4.

The BIA also concurred with the IJ's decision to deny Galicia cancellation of removal based on a failure to establish "exceptional and extremely unusual hardship" with respect to his daughter. *Id.* In particular, the BIA rejected Galicia's assertions that he would be unable to support his daughter or that she would be subject to extreme poverty in Guatemala, pointing out that Galicia was young, healthy, and able to work on his family farm. *Id.* Furthermore, the BIA echoed the IJ's view that "diminished educational opportunities" for Kayla in Guatemala did not amount to "exceptional and extremely unusual hardship." *Id.* Based on a cumulative review of the relevant hardship factors, the BIA concluded that Galicia did not demonstrate that "his removal would result in hardship to his United States citizen child that is substantially beyond that which ordinarily would be expected to result from an alien's removal." *Id.*

## II.

"When the BIA adopts the IJ's reasoning and supplements the IJ's opinion, that opinion, as supplemented by the BIA, becomes the basis for review." *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). While the Court reviews legal conclusions *de novo*, factual determinations are reviewed under a substantial evidence standard. *Id.* We must uphold the BIA's factual determinations if

"supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 247 (citation and quotation marks omitted). "Under this deferential standard, we may not reverse the Board's or the immigration judge's determination simply because we would have decided the matter differently." *Kaba v. Mukasey*, 546 F.3d 741, 747 (6th Cir. 2008) (citation and quotation marks omitted). "Rather, to overturn such a factual determination, 'we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it.'" *Id.* (quoting *Elias-Zacarias*, 502 U.S. at 481 n.1).

**III.**

To establish eligibility for asylum, Galicia must demonstrate that he qualifies as a refugee. 8 C.F.R. § 1208.13(b); *see* 8 U.S.C. § 1158(b)(1)(A). A "refugee" is defined as an alien "who is unable or unwilling to return to [his or her country of nationality], and is unable or unwilling to avail himself or herself of the protection of, that country because of [past] persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Once an alien demonstrates that he or she is a refugee, the Attorney General has the discretion to grant the applicant asylum. 8 U.S.C. § 1158(b)(1)(A).

"[T]he conduct on which the application for asylum is based must go beyond what might reasonably be characterized as mere harassment" to constitute persecution. *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005) (per curiam). Our Court has emphasized that persecution "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Lumaj v. Gonzalez*, 462 F.3d 574, 577 (6th Cir. 2006) (quoting *Fatin v. INS*, 12

F.3d 1233, 1240 (3d Cir. 1993)). Moreover, "'persecution' within the meaning of 8 U.S.C. § 1101(a)(42)(A) requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998); *see also Ndrecaj v. Mukasey*, 522 F.3d 667, 674 (6th Cir. 2008).

Galicia argues the IJ and the BIA erred in concluding that his allegations of harm did not rise to the level of "persecution." In support of this claim, he calls attention to the death threats he and his family members received from guerrillas during the civil war. J.A. 33. This Court has consistently held that mere threats or verbal intimidation are insufficient to establish persecution for the purposes of § 1101(a)(42)(A). *See Mikhailevitch,* 146 F.3d at 390. As we have previously stated, "conduct must rise above mere harassment [to establish persecution]. Types of actions that might cross the line from harassment to persecution include: detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." *Zacarias v. Gonazles*, 232 F. App'x 458, 462 (6th Cir. 2007) (citations and internal quotation marks omitted). Galicia does not offer any evidence of such harm.

Galicia also relies on the guerrillas' beating of his grandfather to support his own case for persecution. Although he acknowledges applicants may not "rely solely on the persecution of [his] family members to qualify for asylum," see *Akhtar v. Gonzalez*, 406 F.3d 399, 406 (6th Cir. 2005) (citation omitted), he nevertheless contends that the threats he received from guerrillas, when combined with the beating inflicted upon his grandfather, established that he was a victim of past persecution. Galicia has not offered any authority that compels a finding of persecution based on

threats of physical violence, even if coupled with harm suffered by family members. We find that Galicia's allegations do not compel a finding of past persecution in light of the high bar set by our precedent.

Given the absence of "past persecution," we deny *a fortiori* Galicia's claim for humanitarian asylum under 8 C.F.R. § 1208.13(b)(1)(iii)(A) as its permits relief only in instances where the past persecution is "particularly severe." *See Pergega-Gjonaj v. Gonazlez*, 128 F. App'x 507, 509, 512 (6th Cir. 2005) (finding past persecution of petitioners through four months of starvation and hard labor, in addition to their witnessing atrocities committed against family members, including murder and severe beatings, was insufficient to warrant humanitarian asylum relief).

Because the record does not compel finding that Galicia was a "refugee" under § 1101(a)(42)(A), we affirm the BIA's order denying asylum.[2] We further affirm the BIA's denial of relief under 8 U.S.C. § 1231(b)(3) for withholding of removal given that Galicia cannot establish eligibility under the less "stringent standard" used for asylum claims. *See Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005).

## IV.

Galicia also challenges the BIA's denial of his application for cancellation of removal. An individual qualifies for cancellation of removal if he: (1) has remained physically in the United States for a continuous of period of not less than ten years; (2) has been of good moral character

---

[2]An asylum applicant may also secure relief from removal based on a "well-founded fear of persecution." *See* 8 U.S.C. § 1101(a)(42)(A). Galicia, however, does not include any argument related to this issue in his brief. By failing to develop this theory, Galicia waived the "well-founded fear of persecution" issue on appeal. *See Shkabari v. Gonzalez*, 427 F.3d 324, 327 n.1 (6th Cir. 2005).

during that period; (3) has not been convicted of certain criminal offenses; and (4) establishes that removal would result in "exceptional and extremely unusual hardship" to his spouse, parent, or child who is a citizen or lawful permanent resident of the United States. 8 U.S.C. § 1229b(b)(1); *Santana-Albarran v. Ashcroft*, 393 F.3d 699, 702 (6th Cir. 2005). The government retains discretion to deny relief even if the applicant satisfies all four elements. *See id.* In this case, the BIA, agreeing with the IJ, held that Galicia did not meet his burden of proof because it found his three year old daughter Kayla, a United States citizen, would not suffer "exceptional and extremely unusual" hardship as a result of Galicia's removal to Guatemala. J.A. 4, 22-26.

### A. Jurisdiction

Galicia's claim for cancellation of removal raises a threshold question of jurisdiction. The Court generally lacks jurisdiction to review the BIA's determinations regarding cancellation of removal under 8 U.S.C. § 1252(a)(2)(B)(i). In addition, 8 U.S.C. § 1252(a)(2)(B)(ii), bars our consideration of any discretionary decision made in immigration cases, other than those relating to applications for asylum.[3] Based on these principles, the government argues we cannot revisit the BIA's ruling on Galicia's cancellation of removal claim. *See Santana-Albarran*, 393 F.3d at 703 (stating § 1252(a)(2)(B) "specifically divests jurisdiction of a court to review judgments regarding the granting of discretionary relief, including the cancellation of removal"); *Valenzuela Alcantar v.*

---

[3] 8 U.S.C. § 1252(a)(2)(B) states in relevant part, "no court shall have jurisdiction to review-- (i) any judgment regarding the granting of relief under section . . . 1229b [pertaining to cancellation of removal] of this title, or (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) [pertaining to asylum] of this title."

*INS*, 309 F.3d 946, 949-50 (6th Cir. 2002) (holding administrative determination regarding extreme hardship under prior, less stringent, "suspension of deportation" standard is considered a discretionary issue and not subject to judicial review).

This Court has carved out an exception to the jurisdictional bar created by § 1252(a)(2)(B), however, when the petitioner claims the BIA ignored its own precedent in making its hardship determination. *Aburto-Rocha v. Mukasey*, 535 F.3d 500, 503 (6th Cir. 2008). *Aburto-Rocha* specifically held that "the choice by the BIA to disregard its own binding precedent-even when deciding an issue that *is* within its discretion-is *not itself* a discretionary decision Congress has excluded from review." *Id.* Accordingly, in *Aburto-Rocha,* we found this Court had jurisdiction to review the petitioner's claim that the BIA failed to follow its own precedent in deciding the hardship prong. *Id.*

As with the petitioner in *Aburto-Rocha*, Galicia contends that the IJ, and, by extension, the BIA, failed to properly apply *In re Recinas*, 23 I. & N. Dec. 467 (BIA 2002), when evaluating his cancellation of removal application. Specifically, Galicia argues, "[t]he IJ made numerous errors in evaluation of the hardship involved . . . . Despite the IJ's conclusion to the contrary, Mr. Galicia's case is very similar to the respondent in *In re Recinas*." Galicia Br. 15. Rather than merely challenge the discretionary matter of weighing of the evidence, Galicia effectively contends the agency ignored its own precedent in arriving at its conclusion. This argument provides us with jurisdiction to review Galicia's petition. *See Aburto-Rocha*, 535 F.3d at 503.

**B. Merits**

While we may review claims that the BIA disregarded its own precedent in finding lack of extreme hardship, we cannot "second guess every choice the agency makes about how to apply uncertain or even conflicting precedents in a given context." *Id.* Agency interpretations of its own precedent are entitled to "considerable deference." *Id.* Thus, the pertinent question is whether the "BIA *reasonably* construed and applied it own precedents" in making the hardship determination, not whether the Court would have made a different determination had we reviewed the case in the first instance. *See id.* (emphasis added).

The "exceptional and extremely unusual hardship" element requires that Galicia provide evidence of harm to his United States citizen daughter that is "*substantially beyond that which ordinarily would be expected to result*" from the alien's deportation. *See In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 59 (BIA 2001) (quoting H.R. Rep. No. 104-828, at 213 (1996) (Conf. Rep.) (emphasis added)). The BIA and IJ relied on the three seminal BIA cases relating to exceptional and extremely unusual hardship in concluding Galicia had not met his burden of proof: (1) *In re Monreal*, 23 I. & N. Dec. 56; (2) *Andazola*, 23 I. & N. Dec. 319; and (3) *Recinas*, 23 I. & N. Dec. 467.

The IJ stated that under *Monreal*, it was instructed to consider "family ties to the United States and abroad, length of residence in the country, the health of the United States citizen child, possibility of other means of adjustment, and the respondent's involvement in the community in deciding whether or not to grant cancellation of removal." J.A. 23. It is important to add that, "[f]actors relating to the applicant himself or herself can only be considered insofar as they may affect the hardship to a qualifying relative." *Monreal*, 23 I. & N. Dec. at 63. *Monreal* specifically

instructs the immigration court to consider the "ages, health, and circumstances" of the qualifying relatives. *Id.*

Review of the BIA and IJ opinions demonstrates that both applied the above factors in a manner faithful to BIA precedent. First, the BIA noted that Kayla was in good health. J.A. 4; *see Monreal*, 23 I. & N. Dec. at 63 (holding that "very serious health issues, or compelling special needs in school" for a qualifying child would make a "strong case"). Second, while recognizing that Galicia and his wife, Rosio, had provided Kayla with a stable home environment, the IJ pointed out that there was no evidence that Rosio, a Mexican national without legal status in the United States, could not accompany Galicia to Guatemala and care for Kayla there as well. J.A. 24. Galicia argues the finding by the IJ is belied by his "credible" testimony that Rosio would not be allowed to enter Guatemala as an "undocumented alien from Mexico." *See* J.A. 42. Accordingly, he claims that Kayla would be "effectively required to give up one of her parents." But the significance of the IJ's credibility finding is logically limited to subject areas where Galicia has personal knowledge. Galicia offers no objective evidence in support of his questionable claim that Guatemalan immigration law bars legal status to the spouse of one of its own citizens. Accordingly, the panel is not compelled by the record to reverse the IJ's factual finding that Rosio would be able to join Galicia in Guatemala if he is removed.

Galicia also claims extreme hardship based on the limited educational opportunities for Kayla in Guatemala. This argument is not persuasive. The BIA and IJ correctly found that while Kayla likely "would suffer a lower standard of education in Guatemala" than in the United States,

"diminished educational opportunities" are not grounds for "exceptional and extremely unusual hardship" under BIA precedent. J.A. 25; *see Andazola*, 23 I. & N. Dec. at 323, 325 n.1.

In *Andazola*, the BIA declined to find extreme hardship when the respondent's native country of Mexico "aspire[d] to provide 9 years of education to every child," while providing less in reality. *Id.* at 323. *Andazola* found that although the standard of education available to the respondent's children in Mexico was not likely equal to what they might have received in the United States, the respondent had "not shown that her children would be deprived of all schooling or of an opportunity to obtain any education." *Id. Andazola* reasoned that recognizing "exceptional and extremely unusual hardship" based on "diminished educational opportunities . . . would mean that cancellation of removal would be granted in virtually all cases involving respondents from developing countries who have young United States citizen or lawful permanent resident children." *Id.* at 325 n.1.

While the BIA and IJ in this case had discretion to construe *Andazola* narrowly and view it as establishing a floor with respect to the amount of education a child must receive to avoid exceptional and extremely unusual hardship, it was not unreasonable to instead interpret *Andazola* broadly and apply it to the case at bar. *See Aburto-Rocha*, 535 F.3d at 503. In other words, it was not unreasonable for the IJ to hold that six years of promised education was analogous to nine years for the purposes of extreme hardship. *See Andazola*, 23 I. & N. Dec. at 325 n.1 (emphasizing "there ha[d] been no showing that the respondent's children would be unable to obtain any education in Mexico.").

Galicia next argues that his daughter will endure extreme hardship because she will suffer from "extreme poverty" if he is removed. He contends he will be unable to financially support her working as a farm laborer, the only occupation in which he has work experience in Guatemala. We are not compelled by the evidence to reverse the BIA's finding that Kayla will not suffer from extreme poverty. *See* J.A. 4. At the time of the immigration hearing in 2008, Galicia was 33 years old, healthy, and able to work. J.A. 32, 47-48. The BIA has previously relied upon these attributes in rejecting claims of extreme hardship based on feared poverty. *See Andazola*, 23 I. & N. Dec. at 320, 324 (finding respondent would be able to support children in Mexico even as a single parent because she was "young [30 years old] and able to work"). In addition, Galicia testified that he worked as a laborer on his father's farm before he left Guatemala. J.A. 47. Despite self-serving assertions to the contrary, Galicia has not offered any evidence explaining why he could not return to this job. The fact that his parents live in Guatemala, as well as seven of his siblings, may also provide a financial safety net that could benefit Kayla. J.A. 42, 45. The lower standard of living, which Galicia and his daughter may experience, is generally "insufficient in [itself] to support a finding of exceptional and extremely unusual hardship." *See Monreal*, 23 I. & N. Dec. at 63-64. Accordingly, we do not find that Galicia's prospective financial situation in Guatemala warrants reversal of the BIA's extreme hardship determination regarding Kayla.

Galicia also contends the IJ and BIA erred in applying *Recinas*, 23 I. & N. Dec. 467. Galicia Br. 15. In *Recinas*, the BIA cited several factors in finding "exceptional and extremely unusual hardship" on behalf of the respondent's United States citizen children. 23 I. & N. Dec. at 472. In relevant part, the BIA noted that the respondent was a single mother with four school-aged children

– aged 5, 8, 11, and 12 – who were United States citizens, unable to speak Spanish well, and could not read or write in that language. *Id.* at 467, 471. In addition, *Recinas* found it significant that the children were entirely dependent on their mother's income generated from her business. *Id.* at 471. Finally, the respondent's family, which included her parents as well as her five siblings, lawfully resided in the United States and were "instrumental in helping her raise her children and obtain the necessary funds to establish her business." *Id.* at 472. The respondent had no close relatives remaining in her native country of Mexico. *Id.* at 469.

Galicia argues that *Recinas* is analogous to his situation because Kayla has spent her entire life in the United States, she is reliant solely on Galicia's income for financial support, and he owns his own business. Notwithstanding these limited factual similarities, the BIA and IJ correctly found *Recinas* was a materially different case for two basic reasons. J.A 4, 25. First, while the United States' citizen children in *Recinas* were of school-age and unfamiliar with Spanish, Kayla was only three years old and already spoke Spanish at the time of Galicia's hearing. J.A 25; *Recinas*, 23 I. & N. Dec. at 472. Thus, it stands to reason that Kayla would have a relatively easier time assimilating after her parent's removal than the *Recinas* children. Second, the respondent in *Recinas* lacked close family members in her native country that could provide emotional support for her children. J.A. 4; *Recinas*, 23 I. & N. Dec. at 471. In stark contrast, Galicia's parents, as well as seven of his siblings, still live in Guatemala. It is not unreasonable to believe that these relatives would be a source of emotional comfort for Kayla. Given these significant distinctions, we find that the BIA and IJ did not unreasonably construe *Recinas* in finding an absence of extreme hardship in this case.

At bottom, none of the arguments offered by Galicia demonstrate that the BIA or IJ "[un]reasonably construed and applied" BIA precedent in finding that Kayla would not suffer extreme hardship if Galicia was removed to Guatemala. *See Aburto-Rocha*, 535 F.3d at 503. Therefore, we cannot grant Galicia cancellation of removal relief.

**V.**

For these reasons, we **DENY** the petition for review and **AFFIRM** the BIA's decision.