NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0519n.06

No. 24-4051

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 04, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| MIRIAM GARCIA CONTRERAS, | ) | |
| Petitioner, | ) ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| PAMELA BONDI, Attorney General, | ) | |
| Respondent. | ) | OPINION |
| | ) | |

Before: WHITE, STRANCH, and MURPHY, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Petitioner Miriam Garcia Contreras ("Contreras") seeks review of an order of the Board of Immigration Appeals ("BIA") denying her application for cancellation of removal. For the following reasons, we DENY the petition for review.

## I.     Background

Contreras, a native and citizen of Mexico, entered the United States without admission or parole as a six- or seven-year-old with her parents in 2004. From 2012 to 2017, Contreras had deferred action status under the Deferred Action for Childhood Arrivals ("DACA") program. She does not currently have legal status.

Contreras lives in Michigan with her parents, her sister, and her two sons, both of whom are American citizens. Several of her aunts and uncles live about 20 minutes away. Contreras is unmarried and her sons have different fathers. Her eldest son, A.G., is 13 years old. His father, an American citizen, has been in and out prison for the duration of A.G.'s life and, as a result, has had little contact with A.G. Her younger son, E.G., is 6 years old. E.G. more regularly sees his

father, who is a lawful permanent resident, although his father was recently incarcerated. Contreras does not have a financial support, custody, or visitation arrangement with either of her sons' fathers, and is solely financially responsible for her children. Contreras works remotely in a temporary customer-service job for Amway, making nineteen dollars per hour. Her children currently receive medical insurance through Medicaid.

In November 2014, Contreras pleaded guilty to a charge of operating a vehicle without a valid license while intoxicated and under the age of 21 in violation of Mich. Comp. Laws. Ann. §§ 257.301 and 257.6256(a), and, in April 2016, she was arrested for driving without a license after rear-ending a car. In May 2016, the Department of Homeland Security initiated removal proceedings against her. Contreras conceded removability but filed an application for cancellation of removal based on exceptional and extremely unusual hardship to her sons and, alternatively, requested voluntary departure.

On January 21, 2022, the immigration judge ("IJ") held a merits hearing during which Contreras offered evidence to support her application. Contreras testified and provided two proffers—one from her son A.G. and one from a friend. Contreras testified that, if removed to Mexico, she would most likely live with her two brothers and grandparents on their rural ranch in Guadalajara, Mexico, where she had spent her early childhood. The ranch is a few hours away from the city, medical facilities, grocery stores, and middle- and upper-level schools. Contreras's brothers work in agriculture, but she is unsure if her grandparents make any income. Because the ranch has only a payphone and no computer or internet connection, Contreras expressed doubts that she would be able to keep her current job.[1] She testified that she does not know if she would

---

[1] Although the ranch does not have internet connection, Contreras confirmed that the home is internet capable.

be able to find employment because it is hard for women. This is especially true in the area surrounding the ranch, where most people work in agriculture.

Contreras testified that, because she is the sole provider for her children, they would likely move with her to Mexico if she is removed. She asserted that both sons, but especially E.G., have health problems and would receive inadequate care in Mexico because any medical treatment would require an extended drive. E.G. was born with an enlarged kidney, also described as asymptomatic swelling of the kidney. Although his condition does not require medication or regular treatment, he sees a urologist for periodic checkups. Contreras confirmed that the urologist said E.G.'s condition is "as low-grade as it gets." A.R. 406. According to Contreras, E.G.'s condition is getting better, and his doctors have not mentioned a need for future treatment. However, Contreras does not believe that a specialist would monitor E.G.'s kidney condition in Mexico. E.G. also struggles with constipation for which he takes over-the-counter medication, although Contreras confirmed that his recent physical exams were all normal. Contreras further testified that E.G. may have delayed speech and that his pediatrician recommended speech classes. From the few words that E.G. has said, he is bilingual.

According to Contreras, A.G. had a condition affecting his throat in 2018. At one point, a physician proposed surgery as an option, but Contreras declined. Because A.G. has not complained about his throat and Contreras has not noticed anything irregular, she believes that he is better. A.G. is otherwise healthy and successful in school. He plays soccer and speaks both Spanish and English. He has traveled to Mexico once and stayed at the family's ranch.

Regarding her sons' educational opportunities in Mexico, Contreras testified that any schooling beyond fifth grade would require a three-hour drive and that not every child goes to school because children start working at a young age. Contreras stated that whether her sons will

be able to attend school beyond fifth grade depends on whether their grandfather can drive them. Contreras additionally expressed concerns about her sons' safety in Mexico because one of her uncles was kidnapped and killed in 2016.

On March 1, 2022, the IJ denied Contreras's application for cancellation of removal but granted voluntary departure. The IJ found Contreras credible. After summarizing the relevant facts, the IJ found Contreras met all the requirements for cancellation of removal except the hardship requirement. *See* 8 U.S.C. § 1229b(b)(1)(D). The IJ "weighed all evidence of this record individually and cumulatively" and compared Contreras's hardship claim to "three seminal cases"—*In re Monreal-Aguinaga*, 23 I. & N. Dec. 56 (B.I.A. 2001); *In re Andazola-Rivas*, 23 I. & N. Dec. 319 (B.I.A. 2002); *In re Gonzalez Recinas*, 23 I. & N. Dec. 467 (B.I.A. 2002)—finding *Andazola* specifically to be a "pretty squar[e]" match. A.R. 259–60.

Regarding Contreras's sons' health, the IJ discussed A.G.'s prior throat condition and concluded that he faced no ongoing health issues. The IJ acknowledged E.G.'s kidney condition but found that it appeared to be on "the lower end of the spectrum" and did not require ongoing treatment. *Id.* at 262. The IJ further determined that there was neither sufficient evidence to establish E.G.'s speech difficulties, nor evidence that he required specialized assistance unavailable in Mexico.

The IJ acknowledged that Contreras's sons would face financial hardship and a standard of living adjustment in Mexico. The IJ noted that Contreras could not do her job remotely in Mexico and may struggle to find a job but concluded that "there's been no showing she'll be unable to find any type of employment." *Id.* at 261, 264. And, acknowledging that "[t]his is going to be a difficult situation," the IJ underscored that Contreras and her sons have a place to live in Mexico and family support in both Mexico and the United States. *Id.* at 264. For these reasons, the IJ

concluded that the hardships facing A.G. and E.G. were all "standard," not exceptional or extremely unusual, and thus denied Contreras's application. *Id.*

The BIA dismissed Contreras's appeal but reinstated voluntary departure. It agreed with the IJ's determination that Contreras did not meet the exceptional and extremely unusual hardship standard, noting that none of the medical, economic, or educational hardships were at the requisite level for relief. Citing *In re J-J-G-*, 27 I. & N. Dec. 808 (B.I.A. 2020), the BIA upheld as correct the IJ's determination that Contreras's sons do not suffer from any medical conditions that establish hardship. It also rejected Contreras's contention that the IJ had ignored evidence or misapplied prior precedent and found no error with the IJ's comparison of the present facts to *Andazola*. Though the BIA acknowledged that moving to Mexico would present hardship and diminished opportunities for Contreras's sons, it agreed that this hardship was not at an extraordinary level. This petition for review followed.

## II. Discussion

### A. Standard of Review

Where, as here, the BIA issues an opinion separate from that of the IJ, we review the BIA's decision as the final agency determination. *Umaña-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013). However, we also review the IJ's decision to the extent the BIA adopted it. *Hachem v. Holder*, 656 F.3d 430, 437 (6th Cir. 2011).

"[T]he application of the exceptional-and-extremely-unusual-hardship standard 'to an established set of facts is a quintessential mixed question of law and fact'" appropriate for our review. *Ceniceros v. Bondi*, No. 24-3345, 2025 WL 1012712, at *3 (6th Cir. Mar. 31, 2025) (quoting *Wilkinson v. Garland*, 601 U.S. 209, 212 (2024)). Because the hardship inquiry is

"primarily factual," our review is deferential. *Wilkinson*, 601 U.S. at 225; *see also Singh v. Rosen*, 984 F.3d 1142, 1154 (6th Cir. 2021).

## B. Analysis

To be eligible for cancellation of removal, Contreras must establish that: (1) she has been physically present in the United States for at least ten years; (2) she is "a person of good moral character"; (3) she has not been convicted of a qualifying offense; and (4) her "removal would result in exceptional and extremely unusual hardship" to a qualifying United States citizen or lawful permanent resident. 8 U.S.C. § 1229b(b)(1).

The only disputed issue in this case is whether Contreras's removal "would result in exceptional and extremely unusual hardship" to her United States citizen children. We recently interpreted the meaning of "exceptional and extremely unusual hardship" to require an "extremely rare" hardship that is "significantly different from or greater than the hardship that a deported alien's family normally experiences." *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 422 (6th Cir. 2024). To succeed under the statute, the claimed hardship must go beyond "expected" hardships resulting from removal, including "loss of financial prospects, separation from loved ones, and reduced educational opportunities." *Id.* There is "little daylight" between our recent reading of the statute and prior BIA authority requiring an applicant to establish hardship "'substantially different from, or beyond, that which would normally be expected'" from removal. *Id.* (quoting *Monreal-Aguinaga*, 23 I. & N. Dec. at 65)).

Although Contreras's brief is not entirely clear, we understand her to be advancing four arguments: (1) the IJ and BIA committed legal error by ignoring certain evidence; (2) the IJ and BIA committed legal error by failing to follow its own precedent; (3) the IJ and BIA committed legal error by failing to weigh her evidence of hardship in the aggregate; and (4) the IJ and BIA

erred in concluding that her removal would not result in exceptional and extremely unusual hardship for her sons. Because Contreras dedicates most of her briefing to her legal challenges, we begin there.

## 1. Alleged Legal Errors

First, Contreras argues that, because the IJ and the BIA "completely ignored" evidence, we should review their factual determinations de novo. Pet. Br. at 11 (quoting *Champion v. Holder*, 626 F.3d 952, 956 (7th Cir. 2010)). Although Contreras does not explicitly state what she believes was not considered, we take her to be referring to the fact she may be unable to find any job at all. Because the IJ and the BIA considered this issue, de novo review is unwarranted.

"Although legal error may occur where material facts have been totally overlooked or seriously mischaracterized," we are cautious to ensure that arguments of this type are not challenges to "discretionary and fact-finding exercises cloaked as a question of law." *Cisse v. Whittaker*, 759 F. App'x 449, 453 (6th Cir. 2019) (citation modified). No legal error occurred here, and Contreras's argument otherwise would have us impermissibly review factual findings. The IJ expressly discussed Contreras's diminished employment opportunities and acknowledged that Contreras "cannot do her [current] job remotely in Mexico," that she "expects to have some difficulties" finding work, and that, if she is able to find a job, "she will earn far less." A.R. 260–61, 264. However, the IJ determined that there had been no showing that Contreras will "be unable to find any type of employment" and that it was "unable to conclude [that she will] be entirely unable to earn a living or suffer from a total lack of support." *Id.* at 264. On review, the BIA acknowledged that "financial hardship" may befall Contreras's sons in Mexico and that her removal would "further impede her financial ability to support her children" but concluded that

this hardship alone is insufficient for relief. *Id.* at 5.[2] Although Contreras may disagree with the IJ and BIA's assessment that the evidence does not persuasively show that she will be unable to get any job, neither the BIA nor the IJ totally overlooked facts in reaching that conclusion.

Contreras's second and third arguments relate to the application of BIA precedent. We have jurisdiction to review Contreras's claim that the BIA failed to follow its own precedent insofar as it is not merely a challenge to the discretionary weighing of the evidence. *Galicia Del Valle v. Holder*, 343 F. App'x 45, 51 (6th Cir. 2009); *see also Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 227–29 (2020). Because Contreras appears to consolidate her second and third challenges, we take them together.

Contreras argues that, rather than apply the cumulative analysis and hardship comparison required under BIA precedent, the IJ and BIA committed legal error by evaluating the evidence "piecemeal" and improperly holding her to a "bright line rule" that excludes claims based on economic or educational hardships.[3] Pet. Br. at 13–20. Contreras asserts that the IJ and BIA did not evaluate E.G.'s health in combination with evidence of economic and educational hardship.

---

[2] Contreras asserts that the BIA erred by not itself addressing that she may not be able to find a job at all. The BIA not only considered financial hardship but also cited to the IJ's extensive analysis of the issue, including where the IJ considered and rejected the possibility that Contreras would be unable to find a job. In this context, the BIA's failure to explicitly address a specific possibility does not show that it was not considered and does not amount to legal error. *See Kilic v. Barr*, 965 F.3d 469, 474 (6th Cir. 2020) (stating the BIA need not "exhaustively analyze every individual piece of evidence and each individual subargument"); *Aoraha v. Gonzales*, 209 F. App'x 473, 476 (6th Cir. 2006) ("The agency's decision is entitled to a presumption of regularity and thus a presumption that the evidence was considered.").

[3] Contreras argues that Board precedent establishes that loss of economic and educational opportunities is only "generally" insufficient in itself for cancellation of removal. Pet. Br. at 15–16. This is an accurate statement of the law, and Contreras is correct that an adjudicator is not foreclosed from finding the hardship standard met under compelling circumstances. However, as explained, the IJ and BIA did not err in determining that no compelling circumstances related to those factors were shown here.

Specifically, she argues the IJ and BIA failed to consider that "[a]ny worsening of [E.G.'s] conditions would prove to be extremely difficult" given the distance between the ranch and medical facilities. Pet. Br. at 17–18. And, while recognizing that E.G.'s speech disorder is undiagnosed and "potential," Contreras contends that the IJ and BIA failed to consider that E.G. may not be able to receive any schooling at all because of the "potential distance he would have to travel to find a school that could accommodate him" due to his speech condition. *Id.* at 18.

There is no dispute that the IJ and the BIA applied the correct legal standard. The IJ and BIA expressly relied on three seminal decisions—*In re Monreal-Aguinaga*, 23 I. & N. Dec. 56; *In re Andazola-Rivas*, 23 I. & N. Dec. 319; *In re Gonzalez Recinas*, 23 I. & N. Dec. 467—which Contreras admits was "correc[t]." Pet. Br. at 13. Pursuant to these authorities, both the IJ and BIA correctly identified that an exceptional and extremely unusual hardship is "limited to truly exceptional situations." A.R. 4 (quoting *Monreal-Aguinaga*, 23 I. & N. Dec. at 62); *see also* A.R. 264 ("[E]xceptional and extremely unusual hardship" is "normally described as hardship beyond that which is normally expected to result."). The BIA additionally relied upon *In re J-J-G-*, 27 I. & N. Dec. at 808, which addresses primarily medical hardship and is, according to Contreras, "apropos in this case." Pet. Br. at 15.

Because we do not have "authority to second guess every choice the agency makes about how to apply uncertain or even conflicting precedents in a given context," we "confine ourselves to asking whether the BIA reasonably construed and applied its own precedents in this case." *Aburto-Rocha v. Mukasey*, 535 F.3d 500, 503 (6th Cir. 2008). We conclude it did. The IJ and BIA appropriately assessed Contreras's claims "at least in part, by comparing it to the hardship others might face." A.R. 5 (quoting *Andazola-Rivas*, I. & N. Dec. at 323). In its hardship comparison, the IJ noted that, unlike in *Recinas*, Contreras has family support in Mexico and fewer

children for whom she is the sole source of income. It instead found *Andazola*, which also involved a single mother with two United States citizen children relocating, to be a "match." *Id.* at 260. And, while giving "very serious consideration[ ]" to Contreras's status as a single mother and her potential difficulty in securing employment, the IJ found that, as was the case in *Andazola*, diminished economic opportunities and adverse country conditions do not rise to the requisite level for cancellation. A.R. 260, 263–64; *see Andazola-Rivas*, I. & N. Dec. at 324 (denying cancellation of removal for minor United States citizen sons of unmarried single mother despite economic detriment, diminished educational opportunities, and lack of family support in Mexico.) On review, the BIA evaluated Contreras's situation against Board precedent and affirmed the IJ's application of *Andazola*. It further found that, like the petitioner in *In re J-J-G-*, Contreras could not establish the requisite level of medical hardship to her sons because there was no evidence of a serious condition or an inability to access care.

Further, and contrary to Contreras's assertion, the IJ and the BIA did not evaluate the hardship factors in isolation. *See Monreal-Aguinaga*, 23 I. & N. Dec. at 63–65 (requiring consideration of "ages, health, and circumstances of qualifying" family members in the aggregate). The IJ "weighed all evidence of this record individually and cumulatively," including the remoteness of Contreras's grandparents' ranch, the related difficulties in accessing educational, employment, and medical resources, Contreras's status as a single mother, the health of Contreras's children, and family support available in both Mexico and the United States. A.R. 259–64. The BIA likewise considered, together with the IJ's opinion, "all hardship factors individually and in the aggregate." *Id.* at 5. We find these statements adequate to show that the IJ and BIA considered all of the hardship factors taken together.

The IJ and BIA's cumulative analysis included consideration of E.G.'s health conditions. The IJ noted that E.G.'s enlarged kidney condition is being monitored by a specialist but is "asymptomatic," "low-grade," improving, and does not currently require treatment. *Id.* at 262. The IJ further found nothing in the record to suggest E.G. will need ongoing or substantial treatment in the future. The BIA affirmed the IJ's determination and identified no evidence that medical treatment for kidney conditions is not available in Mexico. The IJ and BIA similarly considered E.G.'s delayed speech concern and concluded it was not serious given the lack of conclusive diagnosis or evaluation. The IJ recognized that, if E.G. does require treatment, it may not be available on the ranch, but that "there has been no showing that [treatment] is something that would be entirely unavailable." *Id.* at 263. The IJ noted that, given E.G.'s "young age and his inability to speak English or Spanish" he may have an easier time adjusting because he "will have the ability to learn Spanish as his primary language." *Id.* And the BIA likewise considered and rejected Contreras's argument regarding "poor schooling in Mexico and that [E.G.'s] speech delay will worsen if he were to relocate" due to the absence of a conclusive diagnosis. *Id.* at 4–5.

Finding E.G.'s medical conditions not to be serious, the IJ and BIA did not heavily weigh his health-related hardship in their evaluations. This was a reasonable application of precedent and therefore Contreras "has not demonstrated a failure to adhere to the BIA's legal standards." *See Quevedo v. Barr*, 766 F. App'x 345, 349 (6th Cir. 2019). To the extent Contreras asks us to revisit the underlying factual findings regarding the severity of E.G.'s medical conditions or to review the weight the IJ and BIA assigned evidence, we lack jurisdiction to do so. *See Singh*, 984 F.3d at 1155; *see also Cisse*, 759 F. App'x at 454 ("This argument simply challenges the Board and IJ's discretionary assessment and weighing of facts and therefore lies outside our jurisdiction.") (citation modified); *Farraj v. Holder*, 316 F. App'x 398, 400 (6th Cir. 2009)

(finding no jurisdiction to review where petitioner's contention was "merely an objection to the weight the BIA assigned his evidence").

## 2. Hardship Inquiry

Contreras asserts that her removal would cause her sons to suffer exceptional and extremely unusual hardship. As discussed, our review of the hardship inquiry is deferential, though we have not specified what level of deference applies. *Singh*, 984 F.3d at 1154; *see also Moctezuma-Reyes*, 124 F.4th at 423; *Ceniceros*, 2025 WL 1012712, at *4. We find no need to resolve that question here because, under any level of deference, the IJ and BIA adequately supported the conclusion that Contreras failed to establish that her sons will suffer exceptional and extremely unusual hardship.[4]

Contreras points to financial, medical, and educational difficulties that her sons will face if she is removed. The IJ acknowledged that Contreras is the sole source of financial support for her children and that she may have difficulties finding a job in Mexico. However, the IJ explained that it was not clear that Contreras would be unable to find a job, or that she would be without support, especially given the fact that she and her sons will be living with family. Diminished employment opportunities and financial hardship are typical results of removal and do not generally support a finding of requisite hardship. *See Andazola-Rivas*, 23 I. & N. Dec. at 323 ("[E]conomic detriment alone is insufficient to support even a finding of extreme hardship"); *see also Tolentino-Hernandez v. Garland*, No. 20-4021, 2021 WL 4782689, at *3 (6th Cir. Oct. 13, 2021) ("Financial hardship is within the realm of expected hardship."). The IJ and BIA also

---

[4] The government asks us to establish the compelling evidence standard as the appropriate standard of review. Because Contreras cannot prevail under any standard, we need not decide the issue.

correctly found that, while A.G. and E.G. would suffer a lower standard of education in Mexico, "diminished educational opportunities" are not grounds for "exceptional and extremely unusual hardship" under Board precedent. A.R. 261; *see Andazola-Rivas*, 23 I. & N. Dec. at 323, 325 n.1. Contreras did not, for example, show that her "children would be deprived of all schooling or of an opportunity to obtain any education." *Andazola-Rivas*, 23 I. & N. Dec. at 323. Nor did Contreras demonstrate that A.G. or E.G. have "compelling special needs in school." *Monreal-Aguinaga*, I. & N. Dec. at 63.

Finally, as discussed above, the IJ and BIA considered Contreras's evidence of her sons' health-related issues and found them not to be serious. Even though the IJ and BIA acknowledged that access to medical care would be more difficult, it did not find that specialized assistance or treatment was unavailable. *See J-J-G-*, 27 I. & N. Dec. at 811.

Although Contreras's children will undoubtedly suffer hardship, under the deferential standard of review, we cannot say that the IJ or BIA erred in concluding that Contreras did not show exceptional and extremely unusual hardship.

*     *     *

For the reasons set out above, we DENY Contreras's petition for review.

-13-