*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0333P (6th Cir.)
File Name: 04a0333p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

SERGIO WALDMIR
BILLEKE-TOLOSA,
    *Petitioner-Appellant,*

    *v.*

No. 02-4395

JOHN ASHCROFT, Attorney
General,
    *Respondent-Appellee.*

On Appeal from the Board of Immigration Appeals.
No. A29 971 713.

Submitted: August 12, 2004

Decided and Filed: September 30, 2004

Before: MOORE and COLE, Circuit Judges; MARBLEY,
District Judge.[*]

_____

[*] The Honorable Algenon L. Marbley, United States District Judge for
the Southern District of Ohio, sitting by designation.

_____

### COUNSEL

**ON BRIEF:** Barry L. Frager, FRAGER LAW FIRM,
Memphis, Tennessee, for Appellant. Deborah Misir, Mary
Jane Candaux, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellee.

_____

### OPINION

_____

R. GUY COLE, JR., Circuit Judge. Petitioner-Appellant
Sergio Billeke-Tolosa contends that the Board of Immigration
Appeals ("BIA"), in affirming the decision of the Immigration
Judge ("IJ"), violated its own rules by peering behind Billeke-
Tolosa's convictions for the lesser offenses of simple assault
and disorderly conduct to use the underlying allegations of
sexual impropriety as the basis for denying his petition for an
adjustment of status. The Government rejoins that we lack
jurisdiction to review the BIA's decision, and that in any
event, all procedural rules were followed. Because the
Government's first contention is refuted by our own
precedent, and its second by that of the BIA, the order of
removal is **VACATED** and the case is **REMANDED**.

### I. BACKGROUND

In early 1990, courtesy of a student visa, Billeke-Tolosa
arrived in the United States from his native Chile. Although
the visa required him to enroll at the University of Southern
Mississippi, Billeke-Tolosa subsequently transferred to the
University of Memphis, and eventually retired altogether
from his studies. On June 14, 1995, the Immigration and
Naturalization Service mailed a show cause notice to Billeke-
Tolosa, alleging that his failure to pursue a higher education
violated the terms of his visa. At a hearing before the IJ in

March 1997, Billeke-Tolosa conceded his deportability, but asked for an adjustment of his status, such that he could lawfully remain in the United States with his wife, a native-born American citizen whom he married in 1995.

A hearing on Billeke-Tolosa's request for adjustment of status commenced in July 2000, and focused primarily on his criminal history. In addition to a few traffic offenses (one of which stemmed from charges of driving while impaired by alcohol), Billeke-Tolosa had twice been accused of sexual misconduct involving young girls. The first criminal complaint alleged that, while at a Christmas party, he "pulled down the garment of [a five year old girl], exposing her genital area, and then unlawfully and intentionally touched [her] genital area with his hand." The second charged that he exposed himself to the four-year old granddaughter of his landlady.

Billeke-Tolosa denied both charges. The first allegation, he maintained, was motivated by a husband who was jealous that his wife had been socializing with Billeke-Tolosa at the Christmas party. The second allegation, he contended, was hatched by his landlady, who was on the losing end of a dispute about the rent, and who had access to his criminal record—and therefore knew that he was vulnerable to charges of child-sex abuse—because her daughter was dating a police officer. Purportedly advised by his attorney in each case that a "he-said/she-said" confrontation with a young child was a risky proposition, Billeke-Tolosa admitted to lesser charges in each instance. In the first, he pled guilty to misdemeanor assault, for which he was sentenced to time served and fined $1,000. In the second, he pled guilty to disorderly conduct, and received a suspended sentence based on the court's determination that "the Defendant is not likely again to engage in a criminal course of conduct."

Concerned that "where there's smoke, there's fire," the IJ appointed Linda Shoun, a licensed clinical social worker, to evaluate Billeke-Tolosa. Shoun, who was trained in the

diagnosis of pedophilia, opined to the IJ that Billeke-Tolosa was not a pedophile and presented no danger to children or society at large. However, the IJ decided against granting the adjustment of status. Although acknowledging that "the Court cannot go behind [Billeke-Tolosa]'s guilty plea[s]"—in which he did not admit to any sexual crime—the IJ focused on the "two convictions stemming from improper touching or improper exchanges of some type with young girls." As to the fact that Billeke-Tolosa had not been convicted of any charges involving sex abuse, the IJ noted "the difficulties in proving [child-sex offenses] to the State. A child would have to testify about what had happened several years before."

Similarly, the IJ rejected the possibility that Billeke-Tolosa's landlady had, with the help of a police officer, concocted the allegations for mischievous ends, wondering "would it not have been easier for [the child's] [grand]mother to say that [Billeke-Tolosa] exposed himself to her? Then, instead of dragging her child into this, she herself would simply have gone to Court and testified." Indeed, counseled the IJ, "[i]f one is engaged in an act to frame a neighbor, and if the person engaged in the framing is a police officer, the scheme should expose the actors to as little risk as possible."

The IJ ordered Billeke-Tolosa removed, and the BIA affirmed without opinion.

## II. ANALYSIS

Billeke-Tolosa argues that in denying his request for adjustment of status, the IJ impermissibly considered unproven allegations that did not result in convictions, in violation of BIA precedent. Because the BIA affirmed without explanation, "we review the IJ's decision to determine whether the BIA [erred]." *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003).

## A. Appellate Jurisdiction

The Government urges us to stop short of the merits, maintaining that we lack jurisdiction to review the BIA's discretionary denial of a request for status adjustment. The parties agree that the "transitional rules" of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") govern our review. One such rule decrees that "there shall be no appeal of any discretionary decision [to grant or deny adjustment of status]." IIRIRA § 309(c)(4)(E). From the Government's vantage point, because Billeke-Tolosa seeks review of the denial of such discretionary relief, there is simply nothing for us to review.

But Billeke-Tolosa does not challenge the IJ's exercise of discretion *per se*; rather, he argues that the IJ made a legal error in the course of exercising his discretion. A prohibition against the review of a discretionary decision need not extend to non-discretionary decisions upon which the discretionary decision is predicated. *See, e.g., Skutnik v. I.N.S.*, 128 F.3d 512, 514 (7th Cir. 1997) (Easterbrook, J.) ("[D]oes the prohibition of judicial review apply when the [BIA]'s decision is said to violate the Constitution because (for example) it is based on religion or speech?"). Whether we may consider Billeke-Tolosa's challenge—which asserts that, in the course of exercising its discretion, the BIA violated one of its nondiscretionary duties—"depend[s] on whether it is best to emphasize the word 'decision' (all decisions under § 244 could be based on an exercise of discretion) or the word 'discretionary' (only a subset of actions under § 244 reflect an exercise of discretion)." *Id.*

We have chosen the latter course—holding that we may review the non-discretionary decisions that underlie determinations that are ultimately discretionary. *See Valenzuela-Alcantar v. INS*, 309 F.3d 946, 949 (6th Cir. 2002) (prohibition on review applies when the specific decision is "discretionary, demanding an exercise of judgment"). Our approach is echoed by every other circuit,

save for the Seventh, which has considered the question. *See Mickeviciute v. INS*, 327 F.3d 1159, 1164 n.4 (10th Cir. 2003); *Okpa v. INS*, 266 F.3d 313, 317 (4th Cir. 2001); *Najjar v. Ashcroft*, 257 F.3d 1262, 1297 (11th Cir. 2001); *Bernal-Vallejo v. INS*, 195 F.3d 56, 62 (1st Cir. 1999); *Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir. 1997); *but see Pilch v. Ashcroft*, 353 F.3d 585, 587 (7th Cir. 2003).

In short, we lack jurisdiction over this appeal—which seeks to redress the IJ and BIA's failure to follow binding BIA rules—only if the IJ was free to ignore the BIA's binding rules. This appears unlikely, given that "[i]t is an elemental principal of administrative law that agencies are bound to follow their own regulations." *Wilson v. Comm'r of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004). Here, of course, Billeke-Tolosa is claiming that the BIA ignored its precedential case law, rather than an agency regulation. But the Government offers no reason why the BIA should be bound by its regulations yet free to ignore its own precedents. *See also Hernandez v. Ashcroft*, 345 F.3d 824, 846 (9th Cir. 2003) ("A nonprecedential decision by the BIA in defiance of its own precedential case law simply cannot be classified as discretionary."). Nor would the BIA itself endorse such a view, as its own regulations provide that "[e]xcept as Board decisions may be modified or overruled by the Board or the Attorney General, decisions of the Board, and decisions of the Attorney General, shall be binding on all officers and employees of the Department of Homeland Security or immigration judges in the administration of the immigration laws of the United States." 8 C.F.R. § 1003.1(g).

The consistent application of an agency's precedents, like the consistent application of its regulations, serves a critical purpose: the provision of fair notice to those subject to the agency's decisions. As its regulations provide, "the Board, through precedent decisions, shall provide clear and uniform guidance to the Service, the immigration judges, *and the general public* on the proper interpretation and administration of the Act and its implementing regulations." 8 C.F.R.

§ 1003.01(d)(1) (emphasis added). Because the BIA's precedential decisions are expressly prepared for the public's consumption, the BIA's ability to ignore its own precedents at will would "tend[] to cause unjust discrimination and deny adequate notice' and consequently may result in a violation of an individual's constitutional right to due process." *Wilson*, 378 F.3d at 545 (internal quotations omitted).

All of this is a roundabout way of saying that the BIA had no discretion to ignore its own precedent. Billeke-Tolosa's appeal—which asserts that the BIA did so—falls within our purview.

## B. Whether BIA Precedent was Followed

Billeke-Tolosa argues that the IJ's consideration of the unproven allegations of sexual misconduct contravened the BIA's resolution of *In re Catalina Arreguin de Rodriguez*, 21 I. & N. Dec. 38 (1995). In that case, on the way to denying discretionary relief from deportation following a drug conviction, the IJ had considered the "applicant's arrest in 1980 on suspicion of smuggling aliens," which the petitioner denied and for which the petitioner was never convicted. *Id.* at 42. In reversing the IJ's decision, the BIA noted that:

> The Immigration Judge concluded that this incident was a negative factor to be considered in exercising discretion. Just as we will not go behind a record of conviction to determine the guilt or innocence of an alien, so we are hesitant to give substantial weight to an arrest report, absent a conviction or corroborating evidence of the allegations contained therein. Here, the applicant conceded that the arrest took place but admitted to no wrongdoing. Considering that prosecution was declined and that there is no corroboration, from the applicant or otherwise, we give the apprehension report little weight.

*Id.* The facts in our case are materially the same, suggesting that the IJ erred. Although the IJ was concerned that Billeke-Tolosa had a history of sexually abusing young children, he was not convicted of any such crime, denied committing such a crime, and was confronted with no independent evidence suggesting otherwise.

*Arreguin de Rodriguez* does not apply, asserts the Government, for three reasons. First, the Government argues that "[i]n that case, the issue was whether or not to provide a discretionary waiver of criminal conduct under the former Section 212(c) of the INA." But the uncorroborated allegations relied upon by the IJ in that case had nothing to do with the conviction that prompted the petitioner's initial exposure to deportation. Like the IJ in our case, the IJ had "concluded that this incident was a negative factor to be considered in exercising discretion." *Id.* at 42. In short, that the trigger for the deportation proceedings was an unrelated criminal conviction, rather than noncompliance with a student visa, is a distinction without a difference.

Second, the Government insists that "while the alien in *Arreguin de Rodriguez* was not prosecuted for the conduct alleged in the arrest report, petitioner, in contrast, was prosecuted and pled guilty." This would certainly be relevant if Billeke-Tolosa had pled guilty to the sex crimes with which he was initially charged. But Billeke-Tolosa pled to simple assault in one case and disorderly conduct in the other; the IJ denied relief due to his concern that Billeke-Tolosa was a sexual deviant. That he was convicted of lesser crimes is beside the point.

Third, the Government contends that the above-mentioned passage was dicta. Dicta, of course, is language that is only "incidental to th[e] holding." *United States v. De John*, 368 F.3d 533, 539 (6th Cir. 2004). The BIA's prohibiting consideration of unproven allegations that lack any other corroboration, however, was necessary to its reversal of the IJ: in that case, the rule it announced undermined the key

basis upon which the IJ had denied the petitioner discretionary relief.

Finally, because an agency's failure to follow its own procedural rules will rarely constitute harmless error, *see Wilson*, 378 F.3d at 547 ("We do not decide the question of whether a *de minimis* violation may qualify as harmless error."), the BIA's failure to follow its precedent subjected Billeke-Tolosa to substantial prejudice. There was no independent evidence of the allegations against him, and Shoun, the court-retained social worker, concluded that Billeke-Tolosa probably had not committed either of the offenses and likely was not a pedophile. And as noted above, when Billeke-Tolosa pled guilty to disorderly conduct, his sentence was suspended because the court determined that "Defendant is not likely again to engage in a criminal course of conduct."

Moreover, the record clearly reflects that the IJ's concerns about Billeke-Tolosa's sexual conduct were the driving force behind the denial of his petition for adjusted status. Even before Billeke-Tolosa was examined by Shoun, the IJ announced that:

> I'm satisfied at this time that [Billeke-Tolosa] and his wife are very hard-working. I'm satisfied that they have a very stable economic life in the United States. I'm satisfied that they have what appears to be a more marital relationship. Mrs. [Billeke-Tolosa] has stood by her husband through a number of run-ins with the police in a very stressful, difficult situation with a . . . landlady. I'm satisfied that they pay their taxes. I'm satisfied that he's making financial contributions to the community through paying his taxes. I'm also satisfied that he has some community involvement. He testified about helping build this house through a local Presbyterian Church. *If I don't hear anything about indecent exposure charges in . . . Nasvhille and [sexual battery*

> *charges] in Germantown I would have adjusted three hours ago, but I want to know more.*

(emphasis added). Because the IJ suggested that Billeke-Tolosa would have received discretionary relief, but for factors that the IJ was not permitted to consider, the IJ's erroneous consideration of these factors was necessarily prejudicial.

### III. CONCLUSION

For the preceding reasons, the order of deportation is **VACATED** and the case is **REMANDED** for additional consideration, consistent with this opinion.