NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0379n.06
Filed: June 7, 2007

No. 06-3500

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| PATHE KA, | ) |
| | ) |
| Petitioner, | ) |
| | ) ON PETITION FOR REVIEW OF AN |
| v. | ) ORDER OF THE BOARD OF |
| | ) IMMIGRATION APPEALS |
| ALBERTO GONZALES, Attorney General, | ) |
| | ) |
| Respondent. | ) |

Before: ROGERS and COOK, Circuit Judges; and O'MALLEY, District Judge.[*]

COOK, Circuit Judge. Pathe Ka, a native and citizen of Senegal, seeks reversal of the Board of Immigration Appeals' (BIA) denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Relying on the Immigration Judge's (IJ) findings, the BIA held that Ka failed to timely file his asylum application and denied it. The BIA, adopting and affirming the IJ's decision, also found that Ka did not meet his burden of proof for withholding of removal or for protection under the CAT. For the following reasons, we deny Ka's petition for review.

I

_____

[*]The Honorable Kathleen McDonald O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

Ka is a citizen and native of Senegal who came to the United States as a non-immigrant visitor in May 2000. According to Ka, he departed Senegal after he was robbed on a bus in Dakar. Prior to his departure, he was moderately active in the Jef-Jel political party in Senegal. Although it was unclear during his hearing before the IJ, it appears that Ka joined the party in 1988 and was most active in the party between 1997 and 1999, when he was responsible for notifying party members about meetings. Despite arriving in the United States in 2000, Ka did not apply for asylum (or any other form of immigration relief) until after he was arrested by immigration officers in October 2004.

After his arrest, Ka filed for asylum, withholding of removal, and protection under the CAT, based on his political affiliation. The IJ assessed each of his applications and denied them. The BIA affirmed. Ka now appeals.

II

When, as here, the BIA adopts the IJ's reasoning and supplements the IJ's opinion, that opinion, as supplemented by the BIA, becomes the basis for review. *See Singh v. Ashcroft*, 398 F.3d 396, 400-01 (6th Cir. 2005). This court reviews any legal conclusions de novo and factual findings and credibility determinations for substantial evidence. *Tapucu v. Gonzales*, 399 F.3d 736, 738 (6th Cir. 2005); *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004). Under the substantial evidence standard, we must uphold the BIA's decision if it is supported by "'reasonable, substantial, and probative evidence on the record considered as a whole.'" *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001)

(quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). To reverse the BIA's decision, we must find that the evidence not only supports a contrary conclusion, but compels it. *Klawitter v. INS*, 970 F.2d 149, 151-52 (6th Cir. 1992) (citing *Elias-Zacarias*, 502 U.S. at 481).

## A. Asylum

According to the BIA, Ka failed to meet the filing deadline and has not provided any circumstances that would excuse his late failing. We lack authority to review this conclusion because 8 U.S.C. § 1158(a)(3) bars judicial review of "any determination of the Attorney General" regarding the timeliness of an asylum application. *Castellano-Chacon v. INS*, 341 F.3d 533, 544 (6th Cir. 2003). We note that the REAL ID Act, 8 U.S.C. § 1252(a)(2)(D), modified § 1158(a)(3)'s judicial-review limitation by adding the following provision to the statute:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

In *Almuhtaseb v. Gonzales*, this court reconciled the REAL ID Act with *Castellano-Chacon*, explaining that the REAL ID Act "modif[ied] the holding of *Castellano-Chacon* to bar [the court's] review of asylum applications denied for untimeliness only when the appeal seeks review of discretionary or factual questions, but not when the appeal seeks review of constitutional claims or matters of statutory construction." 453 F.3d 743, 748 (6th Cir. 2006). The questions raised by Ka's appeal are clearly in the former category of unreviewable determinations—factual challenges.

Nowhere in any of Ka's materials does he raise any constitutional or otherwise legal claims. These circumstances lead us to conclude that we do not have jurisdiction to review the BIA's denial of Ka's asylum application.

## B. Withholding of Removal

Ka also challenges the BIA's adoption and affirmance of the IJ's decision that he "did not meet his burden of proof for withholding of removal." Applicants qualify for withholding of removal to a particular country "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A).

Given Ka's inability to persuade the IJ that his evidence met even the lesser showing required for asylum of a well-founded fear of future persecution, the IJ determined that "[h]e clearly ha[d] not satisfied the higher standard of proof for withholding of removal." Withholding of removal requires an applicant to demonstrate by a "clear probability"—meaning that it is "more likely than not," 8 C.F.R. § 1208.16(b)—that he will suffer future persecution because of his inclusion in one of the § 1231(b)(3)(A) categories. *INS v. Stevic*, 467 U.S. 407, 412 (1984). To assess the IJ's withholding-of-removal conclusion, then, requires a review of his asylum conclusions.

The IJ's asylum decision rested on three distinct grounds, and the second and third grounds also serve as bases for review of the IJ's withholding-of-removal decision. First, as discussed above,

the IJ concluded that Ka's petition was untimely and that he failed to satisfy any exception to the one-year filing requirement. Second, relying on the following discrepancies, the IJ found Ka not credible:

> (1) "[H]is asylum application stated that he had joined the [Jef-Jel] party in 1999, his testimony in court was that he joined in 1988."
>
> (2) "He testified that he has obtained only 1 JEF-JEL card and it would have been in 1988. When confronted with the fact that his JEF-JEL card says 1998, he stated that this was a replacement card."
>
> (3) "He was extremely vague in his testimony regarding his political activities. Whether he held some informal position or not. He was very vague as to how many meetings he went to or how often the meetings were held, which is odd for a person who was calling other people to go to the meetings."
>
> (4) "The significant portion of the time that he was involved in the party, he spent much of his time in Ivory Coast. So he obviously wasn't running meetings in Dakar."
>
> (5) "In his asylum application, he describes his party as a democracy party. He never once uses the title of JEF-JEL. And the court notes that the asylum application was prepared by his lawyer, it was not prepared by some notary or immigration consultant, who would not have made any effort to get the story right."

We accord these findings considerable deference. *See Klawitter*, 970 F.2d at 151-52 ("Substantial evidence is thus a deferential standard which plainly does not entitle a reviewing court to reverse . . . simply because it is convinced that it would have decided the case differently." (internal quotations omitted)). Ka's brief offers plausible explanations for some of the discrepancies relied on by the IJ in making his credibility determination, but these explanations essentially offer a counter-interpretation of Ka's testimony; they do not *compel* the conclusion that the IJ was incorrect. *Elias-Zacarias*, 502 U.S. at 481.

The IJ also addressed the merits of Ka's future-persecution claim, and the IJ's conclusions on this ground stand unrebutted. As a third basis for denying Ka's asylum petition, the IJ explained that even if Ka were entirely credible, he had not "remotely established a fear of persecution based on political activities." Ka claims that his membership in the Jef-Jel party will expose him to persecution if he is returned to Senegal. He bases this contention on the U.S. State Department's *2003 Country Reports on Human Rights Practices* for Senegal. The report details various human rights abuses that occurred in Senegal in 2003. Ka relies on the following statements in the report: "There were instances of unknown assailants attacking government offices and opposition politicians." U.S. Dep't of State, *2003 Country Reports on Human Rights Practices - Senegal*, (2004), *available at* http://www.state.gov/g/drl/rls/hrrpt/2003/27748.htm. "On October 5, unknown assailants brutally attacked Talla Sylla, leader of the opposition party Jef-Jel and vocal critic of President Wade. Sylla was evacuated to France to obtain medical treatment for his injuries. No arrests were made in the case, [and the police were investigating the identities of Sylla's attackers at year's end]," *id*. (Ka omits the bracketed material). "During the year, opposition members and journalists increasingly reported that they were threatened and harassed after criticizing the President." *Id.*

From these statements, Ka draws the conclusions that "President Wade does not respect democracy or human rights and that he used violent attacks on opposition party members to ensure that he would retain his power." Moreover, apparently relying solely on the same materials, in the section of his brief discussing withholding of removal specifically, Ka argued that he has

clearly established that his life and freedom would be threatened in Senegal on account of his political opinions. He was an active member of the Jef-Jel political party. The Government of Senegal has actively sought to repress Jef-Jel and other opposition parties through violent attacks. Mr. Ka's life and freedom would clearly be in danger if he is returned to Senegal.

The IJ's responses to these contentions, however, are adequate to meet the substantial evidence standard. The IJ explained that "President Wade of Senegal was elected in a free and fair election" and is "not a dictator." As the IJ noted, though there "are some problems with exuberant political activity in the country," and although "some people are occasionally beaten up by thugs . . . it does not appear to be a regular thing" and "[i]t's happened only to a few party leaders and these people are not being arrested." The IJ also observed that "[t]he parties function, and there are many parties in the country, of which JEF-JEL was one." Significantly, the IJ also explained that

the police are investigating the attack on Mr. Sylla and they are even questioning aides to the president. Even if senior party members are in some jeopardy, there is nothing in the background information that indicates that mere members, such as the respondent, would be in any risk whatsoever. . . . The respondent's fear that he could be killed or put in prison are based on nothing but his own opinion and are not credible at all.

Ka offers nothing to rebut these conclusions. As the IJ correctly observed, the only actions that could be deemed persecution happened to opposition-party politicians; mere members are said to be subject only to harassment or threats. Threats and harassment do not suffice; proving "persecution within the meaning of 8 U.S.C. § 1101(a)(42)(A) requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm,

or significant deprivation of liberty." *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998).

In sum, the IJ concluded that Ka was not credible and, even if assumed credible, could prove neither a well-founded fear nor a clear probability of future persecution. Because Ka has failed to show that substantial evidence compels this court to reverse the IJ's decision, we agree with the BIA's conclusion that Ka is not eligible for withholding of removal and thus deny his petition for review.

## C. Convention Against Torture

Ka also challenges the BIA's denial of his application for protection under the CAT. The BIA adopted and affirmed the IJ's decision that Ka did not meet his burden of proving "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2).

The IJ denied Ka's application for relief under the CAT as follows:

> As to convention against torture relief, respondent has not shown any evidence that torture is in any way prevalent in Senegal. And certainly no reason to believe that it is more likely than not that he would be tortured if he were returned to Senegal. There is no reason for believing that he would be tortured by anybody. Certainly nobody connected with government or which would act with government acquiescence. There is violence in the country but it's not limited to opposition politics. There is also violence directed against government officials. So it's not the case that the President Wade has the ability or the inclination to persecute other people.

Ka responds by again noting a few instances of alleged brutality in Senegal, including the attack suffered by Talla Sylla, to which Ka adds, "It appeared to observers that the President of Senegal was behind the attack." He cites the beating of journalists and recounts an incident in which a pretrial detainee in Dakar was handcuffed and tortured by prison guards, which apparently resulted in the amputation of his arms. Ka attempts to connect these events to his own likelihood of being tortured by saying that "[t]hese examples show that the Senegalese government is willing and able to use torture against its political opponents" and that because "Mr. Ka is an activist in an opposition political party, he is likely to be a target for torture." Solid reasons support the IJ's rejection of this tenuous connection. The isolated attack against Sylla does not lead inescapably to the conclusion that all Jef-Jel members are likely to be tortured, and neither does the beating of journalists. His reference to the situation involving the abused pretrial detainee lacks any detail that would suggest, let alone compel, the conclusions he draws. At best, Ka's fear of torture seems to stem from "the existence of a generalized or random possibility of persecution in his native country," which does not satisfy his burden. *Castellano-Chacon*, 341 F.3d at 550. Because Ka offers nothing that compels the court to conclude that the IJ's conclusions are not supported by substantial evidence, we agree with the BIA's denial of protection under the CAT and deny the petition for review.