NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0488n.06

## No. 09-3982

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ANACELIA PEREZ-ROBLERO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW FROM |
| v. | ) | ORDER OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ERIC H. HOLDER, JR., Attorney General | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

**Before: McKEAGUE and STRANCH, Circuit Judges; and MAYS, District Judge.**[*]

**SAMUEL H. MAYS, JR., District Judge**. Petitioner Anacelia Perez-Roblero ("Perez-Roblero") seeks review of the Board of Immigration Appeals' (the "BIA") order denying cancellation of removal and voluntary departure. For the following reasons, we DENY Perez-Roblero's petition for review.

## I.

A native of Guatemala, Perez-Roblero entered the United States at age sixteen on December 7, 1992. Her immigration proceedings began on August 15, 2003, when she received a Notice to Appear before the Executive Office for Immigration Review in Detroit, Michigan from the Department of Homeland Security (the "Government"). At her appearance on February 4, 2005,

---

[*]The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

Perez-Roblero conceded that she was present without having been admitted or paroled and therefore removable under Section 212(a)(6)(A)(I) of the Immigration and Nationality Act (the "Act"). She also stated her intention to apply for two forms of discretionary relief: cancellation of removal, under Section 240A(b)(1) of the Act, and voluntary departure, under Section 240B of the Act.

Immigration Judge Marsha K. Nettles (the "IJ") held a hearing on Perez-Roblero's requested relief on April 9, 2008. After the IJ had received documentary evidence, Perez-Roblero testified on her own behalf. The focus of Perez-Roblero's testimony was the hardship that her three minor children, all United States citizens, would suffer if she were removed to Guatemala. Perez-Roblero testified about their health problems. She noted that her thirteen-year-old son, Hector, and her four-year-old son, Cleybi, suffered from asthma and that Cleybi's condition was serious enough to require daily use of an inhaler and weekly use of a nebulizer to regulate his breathing. Perez-Roblero expressed concern about the availability of medical care near her family's home outside Sibinal, San Marcos, Guatemala, testifying that she remembered traveling seven to eight hours by car to visit a doctor as a child. She acknowledged, however, that she had not investigated the availability of medical care for her children with anyone currently living there. Perez-Roblero also discussed the effect that the lack of educational opportunity and social problems in Guatemala might have on her children. She testified that her children might need to work instead of attend school and expressed concern about gang activity near her family's home. Perez-Roblero acknowledged, however, that she did not know whether her nieces and nephews, who were living in Guatemala, worked or attended school and that she was aware of gang activity near her home outside Detroit.

After discussing the potential hardship to her children, Perez-Roblero admitted that she had extensive family living in Guatemala, including all six of her siblings. Although she had stated on a previously withdrawn asylum application that three of her siblings were living in the United States, including her brother Ignacio, she explained that they had since returned to Guatemala. Perez-Roblero testified that five of her six siblings now resided at her family's home, where they worked on a family farm, cultivating beans, corn, and coffee, some of which they used for subsistence and some of which they sold for profit. She acknowledged that, if she were removed, her parents would probably permit her and her children to live with them, at least temporarily. Perez-Roblero also admitted that she had accumulated assets in the United States, including three automobiles with clean titles, a home with $15,000 in equity, and $10,000 in savings.

After Perez-Roblero's testimony, the IJ stated that she did not believe that Perez-Roblero's physical presence or moral character were at issue in determining her eligibility for cancellation of removal and that her case would "come down to hardship." The Government agreed. To support the case for hardship, Perez-Roblero's son Hector took the stand and reiterated much of his mother's testimony. However, Hector contradicted Perez-Roblero's testimony on one, important point. Although Perez-Roblero had testified that all of her siblings, including her brother Ignacio, were living in Guatemala, Hector testified that Ignacio lived with them in Michigan. Hector said that Ignacio had been present at their home when they left for his mother's hearing.

After Hector's testimony, Perez-Roblero took the stand to explain her prior testimony about Ignacio's presence in the United States. She initially said that she was "just nervous" when she testified that she had no family members in the United States. She then said she was "afraid"

3

because Ignacio had been caught driving while intoxicated recently. The IJ interrupted Perez-Roblero's testimony, said she had given contradictory explanations about her earlier testimony, and asked why she "didn't . . . tell . . . the truth" about Ignacio's presence. Perez-Roblero responded that "they're going to deport him to Guatemala and he basically does not exist here." The IJ asked, "Madam, do you understand that what you told me was not the truth and that what you've essentially done is justifying in your own mind why you should tell me something that is completely false?" Perez-Roberlo answered, "Yes." In response, the IJ said that she had reason to doubt whether any of Perez-Roblero's testimony about her past was true. Perez-Roblero responded that, with the exception of her testimony about Ignacio's presence, everything she had said was true.

Before stepping down, Perez-Roblero attempted to qualify for voluntary departure, saying that she would leave the United States at her own expense if the IJ denied cancellation of removal and that she had sufficient assets to purchase transportation and post a bond. After her testimony, the parties gave closing arguments. In its closing, the Government noted that it had stipulated to Perez-Roblero's good moral character before her misstatement about Ignacio's presence in the United States. The Government urged the IJ to consider that misstatement.

After deliberating, the IJ rendered an oral decision denying cancellation of removal because Perez-Roblero had not shown the statutorily required hardship, the statutorily required good moral character, or entitlement to a favorable exercise of discretion. The IJ concluded that Perez-Roblero had not established that her three United States citizen children would suffer the "exceptional and extremely unusual hardship" required for cancellation of removal. Although the children "had some medical issues," Perez-Roblero had not shown more hardship than "ordinarily would be expected

to result from an individual's removal from the United States." The IJ also concluded that Perez-Roblero's providing clearly false testimony under oath demonstrated her "complete lack of veracity," which made her unable to establish the required "good moral character" and demonstrated that she was not entitled to a "favorable exercise of discretion" even if she could establish statutory eligibility.

The IJ also denied Perez-Roblero's application for voluntary departure. Although Perez-Roblero had the financial means and valid travel documents required, the IJ explained that voluntary departure was a "discretionary form of relief." Concluding that "patently false testimony under oath with respect to the presence of her brother" was a "significant, negative discretionary factor," the IJ denied voluntary departure.

The BIA adopted and affirmed the IJ's conclusions. The BIA held that the IJ had properly concluded that Perez-Roblero had failed to show that her removal would result in exceptional and extremely unusual hardship to her three United States citizen children and therefore she was ineligible for cancellation or removal. The BIA also held that the IJ had properly concluded that, given her false testimony, Perez-Roblero's applications for cancellation of removal and voluntary departure should be denied in the exercise of discretion. The BIA did not decide whether Perez-Roblero had established the good moral character required for both forms of discretionary relief.

## II.

Where the BIA adopts the decision of an immigration judge and provides additional commentary, we review the immigration judge's decision, as supplemented by the BIA, as the final administrative order. *Shan Sheng Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009) (citing *Ka v.*

*Gonzales*, 236 F. App'x 189, 191 (6th Cir. 2007)); *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007) (citing *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005)). To the extent we have jurisdiction, we review questions of law de novo, but defer to the BIA's reasonable interpretations of the Act and its accompanying regulations. *Zhao*, 569 F.3d at 247 (citing *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008)); *Al-Ghorbani v. Holder*, 585 F.3d 980, 991 (6th Cir. 2009) ("The BIA's interpretation of the statute and regulations will be upheld unless the interpretation is arbitrary, capricious, or manifestly contrary to the statute.") (quoting *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007)).

Except as provided elsewhere in the Act, we have jurisdiction to review a final order of removal if the immigration judge who conducted the proceedings sits within this circuit and the petitioner requests judicial review within thirty days of the BIA's final order. *See* 8 U.S.C. §§ 1252(a)(1), 1252(b)(1-2). The IJ who conducted Perez-Roblero's removal proceedings sits in Michigan, the BIA issued its final order on July 16, 2009, and Perez-Roblero filed her petition for review on August 14, 2009. We have jurisdiction over Perez-Roblero's petition for review unless Congress has removed our jurisdiction in another provision of the Act.

The Act removes our jurisdiction to review denials of discretionary relief such as cancellation of removal and voluntary departure. *See id.* § 1252(a)(2)(B). We may not review a decision about discretionary relief unless an exception to that jurisdictional bar applies. *See id.* Because Perez-Roblero seeks review of the BIA's denial of her applications for cancellation of removal and voluntary departure, we lack jurisdiction to review her claims unless an exception applies.

**III.**

Under 8 U.S.C. § 1229b, the BIA may cancel removal of an alien who is removable from the United States and adjust her status to that of a lawful permanent resident if four elements are satisfied. *See* 8 U.S.C. § 1229b(b)(1). The alien must show that (1) she has been physically present in the United States for at least ten years immediately preceding her application for cancellation of removal, (2) she has been a person of "good moral character" during that period, (3) she has not been convicted of certain enumerated offenses, and (4) her "removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." *See id.* "The government retains discretion to deny relief even if the applicant satisfies all four elements." *Sanic v. Holder*, 343 F. App'x 62, 70 (6th Cir. 2009) (citing 8 U.S.C. § 1229b(b)(1) and *Santana-Albarran v. Ashcroft*, 393 F.3d 699, 702 (6th Cir. 2005)).

The BIA denied Perez-Roblero's application for cancellation of removal for two reasons. First, Perez-Roblero was not statutorily eligible because she had not shown that her removal would cause "exceptional and extremely unusual hardship" to her United States citizen children. Second, due to her "clearly false testimony," Perez-Roblero was not "entitled to a favorable exercise of discretion."

A.

A petition seeking review of a BIA decision about cancellation of removal makes jurisdiction a threshold issue. *See Galicia Del Valle v. Holder*, 343 F. App'x 45, 51 (6th Cir. 2009). The Act divests us of jurisdiction to review BIA decisions about cancellation of removal under 8 U.S.C. §

1229b.  *See* 8 U.S.C. § 1252(a)(2)(B)(i).  It also bars our review of any discretionary decisions by the BIA, other than in asylum petitions.  *See id.* § 1252(a)(2)(B)(ii).

Despite those provisions, we have jurisdiction to review at least two categories of claims arising from BIA decisions about cancellation of removal.  *See id.* § 1252(a)(2)(D); *Aburto-Rocha v. Mukasey*, 535 F.3d 500, 502 (6th Cir. 2008) (explaining that there are at least two exceptions to the jurisdictional bar—"one explicitly drawn by the statute, one inferred from its general framework").  The Act explicitly provides us with jurisdiction to review "constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals."  8 U.S.C. § 1252(a)(2)(D); *see Aburto-Rocha*, 535 F.3d at 502.  The Act's framework implicitly provides us with jurisdiction to review non-discretionary decisions, "even where they 'underlie determinations that are ultimately discretionary.'"  *Aburto-Rocha*, 535 F.3d at 502 (citing *Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 711 (6th Cir. 2004)).

Our binding precedent identifies at least one claim that falls within the latter category–the exception permitting review of non-discretionary decisions underlying discretionary relief.  *See Aburto-Rocha*, 535 F.3d at 502-03.  "[T]he choice by the BIA to disregard its own binding precedent—even when deciding an issue that *is* within its discretion—is *not itself* a discretionary decision Congress has excluded from review."  *Id.* at 503 (citing *Billeke-Tolosa*, 385 F.3d at 711-12) (emphasis in original).  In *Aburto-Rocha*, we held that, because the BIA must adhere to its precedential decisions unless they are modified or overruled by the BIA or the Attorney General of the United States, there is an "exception for non-discretionary decisions" implicit in the Act's framework that allows us to "review a claim that the BIA ignored its own precedent in ruling on a

hardship application." *Id.* (citing 8 C.F.R. § 1003.1(g)); *see also Galicia del Valle*, 343 F. App'x at 51 (explaining that, where an alien "effectively contends the agency ignored its own precedent in arriving at its conclusion," we have jurisdiction to review the BIA's hardship decision in considering cancellation of removal); *cf. Morales-Flores v. Holder*, 328 F. App'x 987, 991-92 (6th Cir. 2009) (considering petitioners' argument that the BIA had applied "too restrictive" a standard in deciding hardship for cancellation of removal without addressing jurisdiction).

Our unpublished decisions suggest that we must consider carefully whether an exception to the jurisdictional bar applies. *See Galicia Del Valle*, 343 F. App'x at 51; *Farraj v. Holder*, 316 F. App'x 398, 400 (6th Cir. 2009); *Alshareqi v. Mukasey*, 295 F. App'x 2, 5 (6th Cir. 2008). As we recently explained, "simply calling a question 'legal' is not enough." *See Reyes v. Holder*, No. 09-4055, 2011 WL 477688, at *3 (6th Cir. Feb. 10, 2011). We have construed a claim that the BIA "failed to demonstrate that it properly weighed all of the relevant factors used in assessing hardship," without elaborating what factors the BIA failed to consider, as a mere challenge to the BIA's discretionary hardship decision and therefore outside our jurisdiction. *See Alshareqi*, 295 F. App'x at 5; *accord Reyes*, 2011 WL 477688, at *3 (concluding that we lacked jurisdiction where petitioners were "merely disguising their challenges to the IJ's and BIA's factual and discretionary findings as questions of law by cloaking them in legal terms"); *Farraj*, 316 F. App'x at 400 (concluding that, if a claim "amounts to nothing more than a challenge to the IJ's discretionary and fact-finding exercises cloaked as a question of law," the exception for constitutional claims and questions of law does not apply (quoting *Garcia-Aguillon v. Mukasey*, 524 F.3d 848, 849-50 (8th Cir. 2008))). We have exercised jurisdiction, however, after concluding that, "[r]ather than merely challenge the

9

discretionary matter of weighing of the evidence, [the petitioner] effectively contend[ed] the agency ignored its own precedent in arriving at its conclusion." *Galicia Del Valle*, 343 F. App'x at 51; *see also Aburto-Rocha*, 535 F.3d at 503; *Billeke-Tolosa*, 385 F.3d at 712.

Perez-Roblero argues that we have jurisdiction to review the BIA's hardship decision because the BIA and the IJ "unreasonably construed and failed to apply" applicable precedent in denying cancellation of removal. She asserts that the BIA construed certain precedential decisions "beyond their meaning and intent and misapplie[d] them to [her] and her children." The Government argues that we lack jurisdiction because the BIA's hardship decision was discretionary and asserts that Perez-Roblero's argument is merely an invitation to reweigh the BIA's factual determinations.

Perez-Roblero's argument that the BIA misconstrued and misapplied *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56 (BIA 2001) is not well-taken. She argues that the IJ's "dismissive tone suggests that she interprets [the case] as precluding serious consideration of country considerations." That argument speaks to the BIA's weighing of the various factors, including "the political and economic conditions in the country of return," that, under *In re Monreal-Aguinaga*, should be considered in deciding whether Perez-Roblero had established "exceptional and extremely unusual hardship" to her United States citizen children. *See* 23 I. & N. Dec. at 63-64. It does not raise a legal or non-discretionary question that provides us with jurisdiction. *See Farraj*, 316 F. App'x at 400; *Alshareqi*, 295 F. App'x at 5.

Perez-Roblero's argument about *In re Gonzalez Recinas*, 23 I. & N. Dec. 467 (BIA 2002), a case in which the BIA concluded that an alien had met the statutory hardship requirement, is

similar. The essence of her argument is that the BIA misapplied *In re Gonzalez Recinas* by failing to recognize that her children had significant health issues, Guatemala had more negative country conditions than the alien's home country in *In re Gonzalez Recinas*, and she had worked for the same employer for many years and had provided her children with a reliable standard of living. That argument also speaks to the BIA's weighing of the various factors under *In re Monreal-Aguinaga*. *See* 23 I. & N. Dec. at 63-64. It does not raise a legal or non-discretionary question that provides us with jurisdiction. *See Farraj*, 316 F. App'x at 400; *Alshareqi*, 295 F. App'x at 5.

Perez-Roblero raises two arguments about the BIA's reliance on *In re Andazola-Rivas*, 23 I. & N. Dec. 319 (BIA 2002) that are different in kind. The first is that the IJ concluded that, although *In re Andazola-Rivas* only mentions asthma in a single sentence and in reference to the alien seeking relief, the BIA construed that case to mean that qualifying relatives, such as Perez-Roblero's United States citizen children, could not meet the statutory hardship requirement based on their asthma. *See* 23 I. & N. Dec. at 324 (noting, when referring to the alien, that "[a]lthough she reports suffering from asthma, that condition is apparently under control"). The second is that, although *In re Andazola-Rivas* discusses the available educational opportunities for a full paragraph and makes various statements comparing the quality of opportunities likely to be available in the alien's home country with the quality of those in the United States, the BIA construed the case to mean that the availability in an alien's home country of "any education at all would preclude a finding of exceptional hardship." *See id.* at 323.

The essence of those claims is that the BIA misconstrued and misapplied *In re Anazola-Rivas* in deciding the hardship element. Under our binding precedent, that raises a non-discretionary

11

question and provides us with jurisdiction under the implicit exception for non-discretionary decisions underlying discretionary relief. *See Aburto-Rocha*, 535 F.3d at 503; *Billeke-Tolosa*, 385 F.3d at 712.

The Government argues that, regardless of any jurisdiction we might have over the hardship decision, we lack jurisdiction to review the BIA's decision on cancellation of removal because the BIA denied that relief not only for want of hardship, but also in the exercise of its discretion. According to the Government, where there are two alternative grounds for a decision by the BIA and we lack jurisdiction to review one, we also lack jurisdiction over the other. Perez-Roblero argues that the BIA also misconstrued and misapplied its precedent in denying cancellation of removal in its discretion. The essence of her argument is that, in denying her application based solely on her false testimony, the BIA ignored *In re Edwards*, 20 I. & N. Dec. 191, 195 (BIA 1990).

Under our binding precedent, "the choice by the BIA to disregard its own binding precedent—even when deciding an issue that *is* within its discretion—is *not itself* a discretionary decision Congress has excluded from review." *Aburto-Rocha*, 535 F.3d at 503 (citations omitted). Under *In re Edwards*, "[t]he exercise of discretion in a particular case necessarily requires consideration of all the facts and circumstances involved." 20 I. & N. Dec. at 195 ("There must be a balancing of the social and humane considerations presented in an alien's favor against the adverse factors evidencing his undesirability as a permanent resident." (citation omitted)). Because Perez-Roblero argues that the BIA considered her false testimony and no other factor, the essence of her argument is that the BIA misconstrued and misapplied its precedent by ignoring *In re Edwards*' balancing mandate. *Cf. Alshareqi*, 295 F. App'x at 5. That argument raises a non-discretionary

question and provides us with jurisdiction under the exception for non-discretionary decisions underlying discretionary relief. *See Aburto-Rocha*, 535 F.3d at 503; *Billeke-Tolosa*, 385 F.3d at 712.

Based on the foregoing, we have jurisdiction to review Perez-Roblero's claims that the BIA misconstrued and misapplied its precedent in deciding hardship and exercising its discretion.

B.

In reviewing claims that the BIA misconstrued and misapplied its precedent, we do not "second guess every choice the agency makes about how to apply uncertain or even conflicting precedents in a given context." *Aburto-Rocha*, 535 F.3d at 503; *see Galicia Del Valle*, 343 F. App'x at 51-52 (citation omitted). "What is generally true in administrative law remains true here: An agency's interpretation of its own precedents receives considerable deference." *Aburto-Rocha*, 535 F.3d at 503 (citations omitted). As we have explained, deference is especially appropriate when reviewing questions of law that arise in the context of otherwise non-reviewable, discretionary decisions by the BIA. *See id.* "[S]tringently scrutinizing the BIA's determinations of which precedents apply in which contexts (and with what force) could easily devolve into—or even serve as a mask for—replacing the BIA's hardship judgment with our own." *Id.* The question, therefore, is "whether the BIA reasonably construed and applied its own precedents." *Id.*; *see Galicia Del Valle*, 343 F. App'x at 52 (citation omitted).

In her claim that the BIA misconstrued and misapplied *In re Andazola-Rivas* in deciding whether she had established the requisite hardship, Perez-Roblero first argues that the BIA relied on that decision to conclude that she was precluded from showing hardship based on her sons' asthma. Evaluating the health of Perez-Roblero and her United States citizen children, the IJ's opinion states

13

that "the issue of the medical condition of asthma arose in *Matter of Andazola-Rivas*." In making that statement, the IJ was considering "the health of the respondent and qualifying family members," under *In re Monreal-Aguinaga*. *See* 23 I. & N. Dec. at 63. Nothing in the IJ's opinion suggests that she construed *In re Andazola-Rivas* to mean that Perez-Roblero could not establish the requisite hardship based on her sons' asthma. In concluding that Perez-Roblero had failed to establish that her sons would suffer that hardship because of their asthma, the IJ simply noted that *In re Andazola-Rivas* also considered asthma.

Perez-Roblero's second argument is that the BIA misconstrued *In re Andazola-Rivas* by reading that case to stand for the proposition that "any education at all would preclude a finding of exceptional hardship." In considering an alien's claims about reduced educational opportunities for her children in *In re Andazola-Rivas*, the BIA recognized that her home country would probably not provide them "with an education equal to that which they might obtain in the United States." 23 I. & N. Dec. at 323. The BIA concluded, however, that the alien "ha[d] not shown that her children would be deprived of all schooling or of an opportunity to obtain any education." *Id.* The IJ relied on *In re Andazola-Rivas* in drawing the same conclusions about Perez-Roblero's children.

The BIA "reasonably construed and applied its own precedents" in concluding that Perez-Roblero had not shown that her United States citizen children would suffer exceptional and extremely unusual hardship if she were removed to Guatemala. *See Aburto-Rocha*, 535 F.3d at 503. Under our limited review, the BIA's hardship decision was proper, and that decision made Perez-Roblero statutorily ineligible for cancellation of removal. *See* 8 U.S.C. § 1229b(b)(1)(D); *Morales-Flores*, 328 F. App'x at 992 ("Whether we may disagree with the IJ's conclusions is

14

irrelevant where the IJ's consideration of the hardship factors comports with the language of the statute and precedential decisions applying that provision."). Because the BIA's denial of cancellation of removal was proper on the basis of hardship alone, we need not review the BIA's construction and application of its precedent in denying cancellation of removal in its discretion.

**IV.**

Under 8 U.S.C. § 1229c, the BIA may permit an alien to depart the United States voluntarily at her own expense in lieu of being removed. *See* 8 U.S.C. § 1229c(a)(1). To be statutorily eligible, the alien must show that (1) she has been physically present in the United States for at least one year before issuance of her notice to appear; (2) she has been a person of "good moral character" for at least five years before her application for voluntary departure; (3) she is not removable for an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii) or for reasons related to national security under 8 U.S.C. § 1224(a)(4); and (4) she has established by clear and convincing evidence that she "has the means to depart the United States and intends to do so." *See* 8 U.S.C. § 1229c(b)(1). Even if an alien meets those requirements, an immigration judge may deny voluntary departure. *See* 8 U.S.C. 1229c(a)(1) (explaining that an immigration judge "*may* permit an alien voluntarily to depart the United States at the alien's own expense under this subsection") (emphasis added). The BIA denied Perez-Roblero's application for voluntary departure in the exercise of its discretion.

The Act removes our jurisdiction to review BIA decisions about voluntary departure. *See* 8 U.S.C. § 1252(a)(2)(B)(i). Because voluntary departure is ultimately a discretionary decision, jurisdiction is also barred by 8 U.S.C. § 1252(a)(2)(B)(ii). Although those provisions seemingly foreclose review of BIA denials of applications for voluntary departure, there are exceptions. *See*

*Kharbach v. Holder*, 362 F. App'x 473, 474 (6th Cir. 2010) (citing 8 U.S.C. § 1252(a)(2)(D)); *Patel v. Gonzales*, 470 F.3d 216, 219-20 (6th Cir. 2006) (citing 8 U.S.C. § 1252(a)(2)(D)). As with cancellation of removal, the Act explicitly permits our review of "constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(2)(D); *Patel*, 470 F.3d at 219-20; *see Singh v. Holder*, 326 F. App'x 378, 381-382 (6th Cir. 2009) (citing *Patel*, 470 F.3d at 219); *cf. Marji v. Gonzales*, 166 F.App'x 197, 200 (6th Cir. 2006) (citing *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 630-31 (6th Cir. 2006)). We also retain jurisdiction to review non-discretionary decisions, "even where they 'underlie decisions that are ultimately discretionary,'" *see Aburto-Rocha*, 535 F.3d at 502; *cf. Patel*, 470 F.3d at 220 (concluding that non-discretionary determinations are reviewable questions of law).

Perez-Roblero argues that, in exercising its discretion, the BIA misconstrued and misapplied its precedent in denying voluntary departure. According to Perez-Roblero, the BIA ignored *In re Arguelles-Campos*, 22 I. & N. Dec. 811 (BIA 1999), which enumerates the "many factors" to be weighed "in exercising discretion with voluntary departure applications." *See* 22 I. & N. Dec. at 817. The Government argues that we lack jurisdiction to review the denial of voluntary departure because the BIA denied that relief "as a matter of discretion." Because Perez-Roblero argues "that the BIA ignored its own precedent in ruling" on her application for voluntary departure, we have jurisdiction over this non-discretionary question. *Aburto-Rocha*, 535 F.3d at 503.

We review the BIA's construction and application of its precedent for reasonableness. *Aburto-Rocha*, 535 F.3d at 503. In *In re Arguelles-Campos*, the BIA stated that "many factors may be weighed in exercising discretion with voluntary departure applications." *Id.* (explaining that

"evidence of bad character or the undesirability of the applicant as a permanent resident" may be weighed against "compensating elements such as long residence here, close family ties in the United States, or humanitarian needs"). Unlike *In re Edwards*, which mandates a balancing of positive and negative factors when the BIA exercises its discretion in considering cancellation of removal, *In re Arguelles-Campos* simply articulates factors that may be considered when the BIA exercises its discretion in considering voluntary departure. *Compare In re Edwards*, 20 I. & N. Dec. at 195 (explaining that "[t]here *must be a balancing* of the social and humane considerations presented in an alien's favor against the adverse factors evidencing his undesirability as a permanent resident"), *with In re Arguelles-Campos*, 22 I. & N. Dec. at 817 (stating "that many factors *may be weighed* in exercising discretion with voluntary departure applications") (emphasis added).

Perez-Roblero has not shown that the IJ unreasonably applied BIA precedent to her claim. In denying voluntary departure, the IJ explicitly relied on *In re Arguelles-Campos*, noting that it permits denial as a matter of discretion. The IJ found that Perez-Roblero's "provision of false testimony under oath [was] a significant negative discretionary factor" and denied voluntary departure.

Although Perez-Roblero argues that, instead of weighing the factors articulated in *In re Arguelles-Campos*, the BIA considered only a single factor, her false testimony about her brother's presence in the United States, that consideration is not unreasonable under *In re Arguelles-Campos*. *In re Arguelles-Campos* merely suggests factors that the BIA may weigh in considering voluntary departure. *See In re Arguelles-Campos*, 22 I. & N. Dec. at 817. *In re Arguelles-Campos* does not require the BIA to consider all of the factors it mentions. *See id.* Because *In re Arguelles-Campos*

17

does not mandate factors that the BIA must consider in exercising its discretion about voluntary departure, Perez-Roblero's claim that the BIA considered only one factor is not well-taken.

## V.

The BIA reasonably interpreted its precedents in deciding that Perez-Roblero had not established the requisite hardship for cancellation of removal and did not merit a favorable exercise of discretion for voluntary departure. Therefore, Perez-Roblero's petition is DENIED.