**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0155n.06

Case No. 16-3051

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Mar 09, 2017

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| AKSINIA IVANOVA KANTCHEVA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| JEFF B. SESSIONS, U.S. Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |
| | ) | OPINION |
| | ) | |

**BEFORE: BOGGS, SILER, and DONALD, Circuit Judges.**

**BERNICE BOUIE DONALD, Circuit Judge.** This case arises from an immigration proceeding to remove Aksinia Kantcheva from the United States. Kantcheva claims that the Immigration Judge's ("IJ") denial of her application for adjustment of status and removal order, and the Board of Immigration Appeals' ("BIA") affirmance, were in error. Based on that premise, Kantcheva filed a petition for review. Because the IJ and the BIA did not err when they found that Kantcheva made material misrepresentations, and when they denied her application as a matter of discretion, we deny review of the BIA's decision.

I.

Aksinia Kantcheva is a native and citizen of Bulgaria. She came into the United States on May 16, 1994, as a B-2 nonimmigrant visitor. Kantcheva was authorized to remain in the

United States for a temporary period not to exceed one hundred and eighty days. Shortly thereafter, Kantcheva changed her nonimmigrant status to F-1, student visa, which was valid from 1994 to 2002. On January 24, 2002, Kantcheva again changed her status to H-1/B-1 which authorized her to stay and work in the United States until October 14, 2007.

On June 21, 2010, the Department of Homeland Security ("DHS") initiated removal proceedings against Kantcheva for remaining in the United States beyond the authorized period. DHS charged Kantcheva as subject to removal pursuant to Immigration and Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B)(2012), as an alien present in the United States for a longer time than authorized.

On August 19, 2010, Kantcheva sought relief from removal in the form of an adjustment of status. During a November 16, 2012, merits hearing (the "Merits Hearing"), Kantcheva contended that she was eligible for an adjustment of status to lawful permanent resident pursuant to INA § 245(i). During that hearing, Kantcheva, her husband, her daughter, and a representative from Snelling Staffing Services, Kurt Felker, all provided testimony in support of Kantcheva's application. Documentary evidence was also submitted for consideration by the IJ.

Among the documentary evidence was Kantcheva's I-589 asylum and withholding of removal application (the "Asylum Application") submitted by the DHS, which was filed on March 26, 1998, as well as the asylum officer's referral assessment (the "Referral Assessment"), dated January 22, 2001. The Asylum Application and Referral Assessment were submitted to the IJ for impeachment purposes.

During the Merits Hearing, numerous inconsistencies were raised regarding Kantcheva's eligibility for adjustment of status, stemming from her previously filed Asylum Application. To state it plainly, the inconsistencies were glaring. There were inconsistencies about whether

Kantcheva and her husband were separated, whether she was ever raped or mistreated in Bulgaria, whether her father was killed in Bulgaria, whether her husband was involved in political activity in Bulgaria, and her parents' ethnicities. When questioned about the statements made in the Asylum Application during the Merits Hearing, Kantcheva testified that her application was ninety percent true.

On June 9, 2014, the IJ denied Kantcheva's application for adjustment of status, concluding that Kantcheva failed to establish statutory eligibility for adjustment of status, and alternatively, denied her application as a matter of discretion. In reaching that decision, the IJ explained that Kantcheva was statutorily ineligible for adjustment of status because "[she] failed to demonstrate that she is not inadmissible to the United States for willfully misrepresenting a material fact." R. 135 (citing INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i)(2012)). This conclusion was predicated on the IJ's observations that Kantcheva lacked credibility and the "inconsistencies in her testimony, inconsistencies between her testimony and her previously filed I-589, her evasiveness, and lack of candor." R. 129-30. Alternatively, the IJ, weighed the equities against Kantcheva's lack of credibility, and denied her application as a matter of discretion.

Kantcheva then filed an appeal to the BIA. The BIA dismissed the appeal and affirmed the IJ's decision holding that Kantcheva failed to establish statutory eligibility for adjustment of status. In support of that decision, the BIA concluded that "[t]he Immigration Judge properly found [Kantcheva] failed to demonstrate that she was not inadmissible under section 212(a)(6)(C)(i) of the Act for a material misrepresentation." R. 4. Since Kantcheva could not establish that she was not inadmissible, the BIA held that she could not establish statutory eligibility for adjustment of status. The BIA also affirmed the IJ's denial of the application as a

matter of discretion, based on Kantcheva's inconsistent testimony during her immigration hearing. The BIA determined that Kantcheva's "equities, including her family ties, d[id] not outweigh the seriousness of her evasiveness and lack of truthfulness." R. 5. Kantcheva now petitions this court contending that the IJ and the BIA both erred when (1) they determined that Kantcheva could not establish statutory eligibility for adjustment of status and (2) they denied her application as a matter of discretion.

## II.

This court reviews only the decision of the BIA. *See Ansarri-Gharachedaghy v. INS*, 246 F.3d 521, 513 (6th Cir. 2000). But "[w]here the BIA adopts the IJ's reasoning, the court reviews the IJ's decision directly to determine whether the decision of the BIA should be upheld on appeal." *Gilaj v. Gonzales*, 408 F.3d 275, 282-83 (6th Cir. 2005) citing *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003).

We generally review the BIA's legal conclusions *de novo*, but we "defer to the BIA's reasonable interpretations of the INA." *Patel v. Gonzales*, 432 F.3d 685, 692 (6th Cir. 2005). We review factual findings under a substantial evidence standard "in which we uphold a BIA determination as long as it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). "[U]nless any reasonable adjudicator would be compelled to conclude to the contrary," the BIA's findings of fact are "conclusive." 8 U.S.C. § 1252(b)(4)(B).

## III.

We first turn to the BIA's ruling that Kantcheva failed to establish statutory eligibility for adjustment of status. This court has jurisdiction to review the legal findings that an alien is

statutorily ineligible for adjustment of status under 8 U.S.C. § 1252(a)(2)(D). *See Parklak v. Holder*, 578 F.3d 457, 462-63 (6th Cir. 2009). BIA adopted the IJ's reasoning in determining that Kantcheva is statutorily ineligible for adjustment of status because she willfully made misrepresentations. An alien is deemed inadmissible, and thus ineligible for adjustment of status without a waiver, if she "by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter." INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i). Willful misrepresentations must be: (1) deliberate and voluntary, which requires only "knowledge of falsity," *Forbes v. INS*, 48 F.3d 439, 442 (9th Cir. 1995); and (2) material, meaning the misrepresentations must "have a natural tendency to influence the decisions of the [Immigration and Naturalization Service ("INS")]," *id.* (quoting *Kungys v. United States*, 485 U.S. 759, 772 (1988).

Kantcheva does not challenge the BIA's findings that she made misrepresentations that were willful, as she admits that only ninety percent of the statements made in her Asylum Application were truthful. Rather, Kantcheva argues that the willful misrepresentations were not material and thus should not have rendered her inadmissible.

Kantcheva clearly fabricated many aspects of her Asylum Application or misrepresented facts during the Merits Hearing that were material. It is not credible that she would have forgotten being raped, when it happened, or that it was carried out by a police officer. In her Asylum Application, Kantcheva also misrepresented her husband's involvement with politics, when he testified during the Merits Hearing that there was no such involvement. She testified during the Merits Hearing that her father was hanged, but stated in her Asylum Application that

he died of lymphoma. These misrepresentations were made to influence the decisions of the INS so that she could remain in the United States.

Kantcheva's testimony during the Merits Hearing was not only internally inconsistent, but it was inconsistent with her Asylum Application. Further, she continued to be inconsistent during the Merits Hearing despite being given multiple opportunities to rehabilitate her testimony. Kantcheva's misrepresentations in her Asylum Application were material because the Asylum Application was filed in an attempt to procure legal status in the United States, as were the inconsistencies made during the Merits Hearing, which were made for adjustment of status.

Because these misrepresentations clearly had "a natural tendency to influence the decisions" of the DHS, *see Forbes*, 48 F.3d at 442, the IJ correctly concluded that the misrepresentations were material. Because substantial evidence supports the IJ's determination and the BIA's adoption of the IJ's reasoning that Kantcheva was removable pursuant to INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i) because she made willful misrepresentations of material facts, we affirm the BIA's determination that Kantcheva could not establish statutory eligibility for adjustment of status.

IV.

This court lacks jurisdiction to review the discretionary denial of an adjustment of status under 8 U.S.C. § 1252(a)(2)(B)(i). *Pilica v. Ashcroft*, 388 F.3d 941, 945 (6th Cir. 2004). However, we do have the authority to "review the non-discretionary decisions that underlie determinations that are ultimately discretionary." *Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 711 (6th Cir. 2004). Specifically, we have the jurisdiction to review the failure of an ALJ and the BIA to follow precedent. *Id.* at 712.

Kantcheva contends that the BIA did not follow precedent when it failed to balance the positive and adverse factors in the record to determine whether she warranted a favorable exercise of discretion. This court has jurisdiction to review this contention because it rests on the alleged failure of the IJ and the BIA to follow established precedent.

However, after review we find that the IJ, and the BIA adopting the reasoning of the IJ, did in fact balance the positive and adverse factors in the record in the discretionary denial of Kantcheva's adjustment of status. The IJ noted that Kantcheva entered the United States lawfully, obtained a degree, secured multiple jobs, has family ties, has been in this country for almost twenty years, has no criminal record, and has filed taxes. However, both the IJ and the BIA found that those equities did not outweigh the seriousness of her evasiveness and lack of candor. Therefore, the IJ, and the BIA adopting the reasoning of the IJ, followed precedent by balancing the positive and adverse factors in the discretionary denial of Kantcheva's adjustment of status. Because the IJ and the BIA did not fail to follow precedent, and did in fact balance the positive and adverse factors in the discretionary denial of Kantcheva's adjustment of status, we deny review of the decision of the BIA's discretionary denial of an adjustment of status.

V.

For the foregoing reasons, we **DENY REVIEW** of the BIA's decision.