**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 26, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

IVAN GERARDO ZAMARRIPA-
CASTANEDA,

　　　　Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

　　　　Respondent.

No. 19-9565
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **MORITZ**, Circuit Judges.
_____

Ivan Gerardo Zamarripa-Castaneda petitions for review of a final order of

removal and an order denying his motion to remand. We deny the petition.

## I. Background

Zamarripa-Castaneda is a Mexican citizen. He entered the United States

through Texas in January 2015 as a nonimmigrant visitor with a valid Border

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Crossing Card. He traveled to Colorado and, in November 2015, married a United States citizen. In March 2018, he was involved in an automobile accident with a semi-truck in Denver. According to the police report, Zamarripa-Castaneda tried to merge onto an interstate highway and collided with the truck, which crashed and caught fire, killing its driver. As multiple eyewitnesses reported, Zamarripa-Castaneda fled the scene on foot. He soon called police and reported that his truck had been stolen at gunpoint. Police found him at his home a couple of hours after the accident. They observed that he smelled of alcohol and had slurred speech, unsteady balance, and watery eyes. He told the officers that his car had been stolen, but he eventually admitted his involvement in the accident. He submitted to breathalyzer and blood-alcohol tests, which showed that his blood-alcohol content was 0.121. He was arrested and charged under Colorado law with vehicular homicide-DUI and leaving the scene of an accident causing death.

Shortly thereafter, Zamarripa-Castaneda was served with a notice to appear. The notice charged him with removability under 8 U.S.C. § 1227(a)(1)(C)(i) as an alien who failed to comply with the conditions of the nonimmigrant status under which he was admitted.[1] Before an immigration judge (IJ), Zamarripa-Castaneda conceded removability as charged and indicated he would seek adjustment of status

---

[1] The government alleged that Zamarripa-Castaneda's Border Crossing Card allowed him to visit only within 25 miles of the U.S.-Mexico border and that he travelled farther than that without an immigration officer's permission. *See* Admin. R., Vol. 2 at 929, 981.

based on an I-130 immigrant petition his wife filed. The parties stipulated that he was statutorily eligible for adjustment of status under 8 U.S.C. § 1255(a), so the only issue remaining at the final hearing was whether he deserved a status adjustment as a matter of the agency's discretion.[2] *See id.* § 1229a(c)(4)(A) (requiring an alien seeking discretionary relief or protection from removal to establish eligibility and that he "merits a favorable exercise of discretion"); *id.* § 1255(a) (providing that the Attorney General retains discretion whether to adjust an alien's status).

At the hearing, Zamarripa-Castaneda testified about his family, his work history, and other things. But despite the IJ's warning that the refusal to testify about the criminal charges pending against him could lead to a negative inference, Zamarripa-Castaneda asserted his Fifth Amendment right against self-incrimination and refused to testify about the accident because the criminal case against him was set for a jury trial.

In a written decision, the IJ found that several factors favored granting adjustment of status. Zamarripa-Castaneda had a good work history since his arrival in the United States in 2015 and no criminal convictions. He has a wife and two young children, all United States citizens, who live in Denver and depend on him for support. And he provided 39 favorable support letters stating he is hardworking, a good father, and a dependable provider. But the IJ determined that several negative

---

[2] Zamarripa-Castaneda also applied for asylum, withholding of removal, and relief under the Convention Against Torture, but he does not seek review of the agency's denial of those forms of relief.

3

factors outweighed the positive ones: Zamarripa-Castaneda's conduct in connection with the accident, as reflected in the police report, in particular that his intoxicated driving resulted in death and that he lied to the police to avoid liability; his failure to demonstrate any efforts at alcohol rehabilitation; the short time he had lived in the United States; and the absence of substantial hardship to his wife and children. The IJ also (apparently[3]) drew a negative inference from Zamarripa-Castaneda's refusal to testify about the accident. Based on these considerations, the IJ denied adjustment of status as a matter of discretion. Although not included in his written decision, the IJ also suggested (at the conclusion of the final hearing) that Zamarripa-Castaneda was likely ineligible for post-conclusion voluntary departure.

Zamarripa-Castaneda appealed to the Board of Immigration Appeals (Board). As relevant here, he argued that the IJ erred by admitting the police report, affording the report substantial weight, drawing a negative inference from his unwillingness to testify about the accident, and finding him ineligible for post-conclusion voluntary departure. In support of his appeal, he submitted a report his defense investigator prepared analyzing the police report. Zamarripa-Castaneda asked the Board to reverse the IJ's decision or, alternatively, to remand for consideration of the investigator's report and post-conclusion voluntary departure.

---

[3] In a footnote, the IJ mentioned his warning to Zamarripa-Castaneda about his refusal to testify about the accident, but the IJ never expressly stated he drew a negative inference from that refusal.

4

The Board upheld the IJ's decision and declined to remand. The Board held that the IJ appropriately admitted the police report. The Board also held that the IJ did not err in weighing the report because the negative factors in the status-adjustment analysis, in particular the allegations of drunk driving, vehicular homicide, and fleeing the scene of an accident, greatly outweighed the positive equities. The Board denied the motion to remand for consideration of the defense investigator's report because the report was unlikely to change the denial of cancellation as a discretionary matter. The report, the Board said, only identified minor flaws in the police report and did not provide strong exculpatory evidence or mitigating circumstances, but even considering it, the negative inference drawn from Zamarripa-Castaneda's refusal to testify about the accident would remain valid. Finally, the Board declined to remand for consideration of post-conclusion voluntary departure because of the very significant negative factors and Zamarripa-Castaneda's failure to present countervailing positive equities that would support a discretionary grant of voluntary departure.

## II. Discussion

### A. Denial of status adjustment

#### 1. Jurisdiction

In challenging the denial of his application for adjustment of status under § 1255(a), Zamarripa-Castaneda argues that the Board failed to follow its own precedent (and the precedent of other circuit courts) regarding (1) admission of the police report as proof of the commission of a crime and (2) the appropriate weight to

5

give the police report. The government argues that we lack jurisdiction to review these arguments. We disagree with the government.[4]

In reviewing a judgment involving adjustment of status under § 1255, our jurisdiction is limited to "constitutional claims or questions of law." *See* 8 U.S.C. §§ 1252(a)(2)(B)(i), (a)(2)(D); *Sosa-Valenzuela v. Holder*, 692 F.3d 1103, 1115 (10th Cir. 2012) (explaining that absent constitutional claims or questions of law, we lack jurisdiction to review judgments regarding adjustment of status under § 1255). And as we recently explained in the context of a discretionary decision regarding cancellation of removal, we have jurisdiction to determine, as a question of law, whether the agency "depart[ed] from or ignore[d] its precedent." *Galeano-Romero v. Barr*, 968 F.3d 1176, 1184 (10th Cir. 2020). Although *Galeano-Romero* involved a discretionary decision regarding relief under § 1229b, its reasoning applies to the discretionary denial of relief under § 1255, because both § 1229b and § 1255 are listed in § 1252(a)(2)(B)(i) as judgments we may not review except for constitutional claims and questions of law. We therefore have jurisdiction over the two arguments Zamarripa-Castaneda raises with respect to the denial of his application for adjustment of status.[5] But as we explain, the Board did not depart from or ignore its own precedent.

---

[4] We issued a jurisdictional show-cause order on this matter. The parties have responded to that order, and we have considered their responses.

[5] Zamarripa-Castaneda argues, in limited fashion, that these failures also amount to a due process violation. The government responds that he has not raised a bona fide constitutional claim that § 1252(a)(2)(D) would allow us to review. But

6

## 2. Merits

Zamarripa-Castaneda argues that the Board disregarded its own precedent and the precedent of some other circuit courts regarding (1) admission of an uncorroborated police report for proof of the commission of a crime and (2) the weight afforded such a report. These arguments raise questions of law, *Galeano-Romero*, 968 F.3d at 1184, so our review is de novo, *Vladimirov v. Lynch*, 805 F.3d 955, 960 (10th Cir. 2015). Because a single Board member decided Zamarripa-Castaneda's appeal, the Board's decision is the final agency determination we review. *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007). But we may look to the IJ's decision "to the extent that the [Board] relied upon or incorporated it." *Id.*

We disagree with Zamarripa-Castaneda's arguments. Board precedent expressly permits consideration of police reports in decisions involving discretionary relief. In *In re Thomas*, 21 I. & N. Dec. 20, 23 (B.I.A. 1995), the Board recounted that "[i]n examining the presence of adverse factors on an application for discretionary relief, this Board has found it appropriate to consider evidence of unfavorable conduct, including criminal conduct which has not culminated in a final

---

because we conclude that we have jurisdiction to review whether the Board failed to follow its own precedent, we need not resolve the parties' disagreement regarding the putative due process argument. Nonetheless, we have rejected a due process challenge to the admission of hearsay evidence in removal proceedings where the "evidence was probative and there [was] no indication that its use was fundamentally unfair." *Vladimirov v. Lynch*, 805 F.3d 955, 964 (10th Cir. 2015). Zamarripa-Castaneda fails to develop any cogent argument that it was fundamentally unfair for the IJ to use the police report as evidence of his conduct in connection with the accident, and, as we will discuss, the Board's conclusion that the evidence was probative is consistent with its own precedent.

7

conviction for purposes of the Act." And in *In re Teixeira*, 21 I. & N. Dec. 316

(B.I.A. 1996), the Board drew an important distinction between removal decisions

that focus on criminal convictions and cases involving discretionary relief. The

Board held that a police report may not be considered in determining removability

where the immigration laws require "a focus on a criminal conviction, rather than on

an alien's conduct." *Id.* at 321. In contrast, the Board explained that in cases

involving discretionary relief, it is appropriate to admit a "police report[] concerning

circumstances of arrest . . . because it bears on the issue of the respondent's *conduct*

when he was arrested, and this in turn is germane to whether the respondent merits

discretionary relief." *Id.*

In upholding the IJ's consideration of the police report, the Board relied on

both *Thomas* and *Teixeira*. Zamarripa-Castaneda has addressed *Teixeira* but not

*Thomas*. He argues that under *Teixeira*, police reports are not admissible to prove

guilt of a particular offense. That much is true, but the IJ's focus in deciding whether

to grant his application to adjust status was not whether he was guilty of the charged

offenses but on his "conduct when he was arrested," *id.* (emphasis omitted). And in

that circumstance, *Teixeira* plainly permitted consideration of the police report.[6]

---

[6] Relatedly, Zamarripa-Castaneda argues that an uncorroborated police report
is not among the documents listed in 8 C.F.R. § 1003.41(a) (formerly 8 C.F.R.
§ 3.41(a)) as "admissible . . . evidence in proving a criminal conviction." That much
is true, but as just explained, the IJ did not use the police report to prove a criminal
conviction, so this argument fails. For the same reason, Zamarripa-Castaneda
mistakenly relies on *Shepard v. United States*, 544 U.S. 13 (2005), which concerned
whether courts can consider a police report to determine, for purposes of the Armed

Zamarripa-Castaneda also claims the Board failed to follow several of its other precedents, but each is distinguishable. In *In re Arreguin De Rodriguez*, 21 I. & N. Dec. 38, 42 (B.I.A. 1995), the Board said it was "hesitant to give substantial weight to an arrest report, absent a conviction or corroborating evidence of the allegations contained therein." But an important factor in *Arreguin De Rodriguez* was that "prosecution [had been] declined." *Id.* Here, although there was no corroborating evidence, prosecution was not "declined." The Board specifically distinguished

---

Career Criminal Act, if "an earlier guilty plea necessarily admitted, and supported a conviction for, generic burglary," *id.* at 16.

Equally unavailing is Zamarripa-Castaneda's reliance on the statement in *Schware v. Board of Bar Examiners*, 353 U.S. 232, 241 (1957), that "[t]he mere fact that a man has been arrested has very little, if any, probative value in showing that he has engaged in any misconduct." *Schware* concerned whether the denial of an application to take a bar exam violated due process to the extent the denial was based on the applicant's arrest records as adverse evidence regarding moral character. *Id.* at 233-35. Setting aside the fact that *Schware* was not an immigration case, *Schware* is distinguishable for a number of other reasons. First, the applicant was never formally charged or tried in connection with the first of his two arrests, and in that circumstance, the Court said, "whatever probative force the arrest may have had is normally dissipated." *Id.* at 241. Here, at the time of the hearing before the IJ, Zamarripa-Castaneda was charged and awaiting trial. Second, the *Schware* Court considered the facts surrounding the first arrest to determine its "present significance" and concluded that it had little. *Id.* Here, the IJ considered the facts and concluded they had great present significance. Third, the *Schware* Court discounted the significance of the second arrest because after indictment, the charges were dropped, and "the nature of the offense" was insufficient to support a finding of bad moral character. *Id.* at 242-43. Here, the charges were not dropped, and the IJ explained that Zamarripa-Castaneda's drunken driving and attempts to avoid responsibility for the accident were negative factors in the adjustment calculus. Fourth, the *Schware* Court relied on the fact that the arrests "occurred many years ago," *id.* at 243, specifically, some fourteen to twenty years prior to the bar application, *see id.* at 234, 237. Here, Zamarripa-Castaneda's arrest occurred less than a year before the IJ's decision.

9

*Arreguin De Rodriguez* on this basis.  The distinction is valid, and therefore we cannot say that the Board failed to follow its own precedent.  *See Johnson v. Ashcroft*, 286 F.3d 696, 700 (3d Cir. 2002) (recognizing rule that Board "must follow, distinguish, or overrule [its] own precedent"); *see also Arias-Minaya v. Holder*, 779 F.3d 49, 54 (1st Cir. 2015) (noting that *Arreguin De Rodriguez* "rested on idiosyncratic facts" and did not "create an ironclad rule that an arrest warrant without a subsequent conviction may never be considered in the discretionary relief context").

Zamarripa-Castaneda also directs our attention to *In re Sotelo-Sotelo*, 23 I. & N. Dec. 201 (B.I.A. 2001).  *Sotelo-Sotelo* involved another discretionary decision—cancellation of removal.  The Board ruled that although it could consider an outstanding warrant for an alien's arrest in Mexico on a murder charge, it would not treat the warrant as an adverse factor because there was no conviction.  *Id.* at 205. *Sotelo-Sotelo* is distinguishable because at the time of the IJ's decision, Zamarripa-Castaneda's criminal case had proceeded beyond the outstanding-warrant stage.  And as the Board pointed out in its decision here, *Thomas*, which we discussed above, directs that the nature of an alien's contacts "with the criminal justice system" and "the stage to which [the criminal] proceedings have progressed should be taken into account and weighed accordingly."  21 I. & N. Dec. at 24. *Thomas* further directs that "the probative value of and corresponding weight, if any, assigned to evidence of criminality will vary according to the facts and circumstances of each case and the nature and strength of the evidence presented."  *Id.*  Given that

10

the criminal case against Zamarripa-Castaneda was headed to a jury trial, we cannot say the Board's decision is inconsistent with *Sotelo-Sotelo*.

Zamarripa-Castaneda faults the IJ for relying on *In re Edwards*, 20 I. & N. Dec. 191 (B.I.A. 1990), as support for consideration of the police report. As he points out, criminal convictions were at issue in *Edwards* and were directly relevant to whether the agency should grant a waiver of the convictions. But although the IJ relied on *Edwards*, the Board did not, and the other caselaw we have discussed provides more than sufficient support for the Board's decision upholding the IJ's reliance on the police report.

Zamarripa-Castaneda further relies on *Billeke-Tolosa v. Ashcroft*, 385 F.3d 708 (6th Cir. 2004), in support of his argument that uncorroborated police reports are not admissible in the discretionary context. And he relies on *United States v. Johnson*, 710 F.3d 784 (8th Cir. 2013), in support of his argument that such reports are not entitled to substantial weight. But our focus is on whether the Board disregarded its own precedent, not the law from other circuits. In any event, *Billeke-Tolosa* and *Johnson* are distinguishable from this case and therefore unpersuasive. In *Billeke-Tolosa*, the Sixth Circuit ruled that the agency's denial of adjustment of status based on allegations of sexual misconduct in criminal complaints contravened *Arreguin De Rodriguez* because the alien pleaded guilty to other charges, and the allegations used to deny adjustment were never proven, *id.* at 712; and the alien's own testimony along with that of an IJ-appointed expert contradicted the police

11

report, *id.* at 709-10, 712-13.  Those factors are lacking here.[7]  *Johnson* concerned

whether a probation-revocation decision based solely on a police report read into

evidence by a probation officer violated the defendant's due process right to question

adverse witnesses under Fed. R. Crim. P. 32.1(b)(2)(C).  710 F.3d at 787-89.  But the

Federal Rules of Criminal Procedure do not apply in immigration removal

proceedings, *see* Fed. R. Crim. P. 1(a)(1) (limiting application of the Federal Rules of

Criminal Procedure to "criminal proceedings"), and the limited due process rights

afforded to an alien in removal proceedings are not coextensive with those of a

criminal defendant, *see Schroeck v. Gonzales*, 429 F.3d 947, 952 (10th Cir. 2005)

(explaining that "the extensive constitutional safeguards attending criminal

proceedings do not apply" to removal proceedings, where aliens are "entitled only to

. . . the opportunity to be heard at a meaningful time and in a meaningful manner"

(internal quotation marks omitted)).

In sum, we conclude that the Board did not disregard its own precedent

regarding admissibility of the police report or the weight the IJ afforded it.  To the

extent Zamarripa-Castaneda asks us to review the weight actually afforded to the

---

[7] In his opening brief, Zamarripa-Castaneda mentions, but has not adequately challenged, the Board's reliance on the negative inference the IJ drew from his unwillingness to testify about the accident.  Therefore, he has waived review of that issue.  *See Becker v. Kroll*, 494 F.3d 904, 913 n.6 (10th Cir. 2007) ("An issue or argument insufficiently raised in the opening brief is deemed waived.").  And as we conclude in upholding the Board's denial of Zamarripa-Castaneda's request for remand to consider his investigator's analysis of the police report, the Board did not abuse its discretion in determining that the investigator's report identified only minor flaws in the police report.

police report, we lack jurisdiction to do so. *See Galeano-Romero*, 968 F.3d at 1183 ("That the Board has announced a standard to aid its [discretionary decision-making] does not create jurisdiction for us to review the Board's *application* of that standard, provided that the Board acknowledges its standard and exercises its discretion within the bounds of its precedents' cabining of such discretion.").

## B. Denial of motion to remand

Zamarripa-Castaneda contends that the Board erred in refusing to remand his case for consideration of (1) the report his criminal defense investigator prepared and (2) post-conclusion voluntary departure. Our review is for abuse of discretion. *Witjaksono v. Holder*, 573 F.3d 968, 978-79 (10th Cir. 2009). The Board abuses its discretion when its "decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Id.* at 979 (internal quotation marks omitted).

### 1. Investigator's report

To obtain remand for consideration of the investigator's report, Zamarripa-Castaneda had to demonstrate that the report "would likely change the result in the case." *Maatougui v. Holder*, 738 F.3d 1230, 1240 (10th Cir. 2013) (internal quotation marks omitted).[8] The Board concluded that Zamarripa-Castaneda did not meet his burden because the report did "not contain strong evidence exonerating [him], or show mitigating circumstances with respect to his actions."

---

[8] Although *Maatougui* concerned a motion to reopen, the same standard applies to motions to remand. *See Witjaksono*, 573 F.3d at 979 n.10.

13

Admin. R., Vol. 1 at 6. The Board also concluded that the report did not invalidate the negative inference drawn from Zamarripa-Castaneda's refusal to testify about the accident.

Zamarripa-Castaneda argues that the Board abused its discretion because it engaged in fact-finding prohibited by 8 C.F.R. § 1003.1(d)(3), and failed to supply any reasoning to support its conclusion that the report would not likely change the result. We are not persuaded.

First, by examining the report and concluding that it was not likely to result in a different outcome on remand, the Board did not engage in improper fact-finding but instead acted within the confines of its discretionary authority. In cases concerning discretionary relief such as adjustment of status, the Board has discretion to deny a motion to remand based on a determination that "the movant would not be entitled to the discretionary grant of relief." *INS v. Abudu*, 485 U.S. 94, 105 (1988). That is precisely what the Board did here. Although the Board necessarily considered factual allegations set out in the police report and the investigator's report, it did not find facts. But even if it did, § 1003.1(d)(3)(iv) prohibits the Board from finding facts "in the course of deciding appeals," not when it considers whether to remand for consideration of discretionary relief based on new evidence.

Second, as required, the Board explained its reasoning, so it did not abuse its discretion. To the extent Zamarripa-Castaneda's argument is that the Board's reasoning was irrational and therefore an abuse of discretion, we disagree. Although the investigator summarized the accident details, he did not, as Zamarripa-Castaneda

14

contends, determine that the evidence tended to show the accident was the truck driver's fault for not allowing Zamarripa-Castaneda to merge onto the highway. To the contrary, the investigator reported that Zamarripa-Castaneda's pickup truck was entering the highway in a lane that "yield[s] to vehicles" where the semi-truck was traveling, Admin. R., Vol. 1 at 47, and, according to a witness unidentified in the police report, sped up in the shoulder when the semi driver either "did not see him or chose not to let him merge into the lane," *id.* at 49. The two trucks then crashed side to side. The investigator's report also noted that several witnesses said the driver of the pickup truck, who fled on foot, was a white or Hispanic male dressed in tan pants and a flannel shirt, and police recovered a pair of tan pants at Zamarripa-Castaneda's residence. *Id.* These observations do not suggest that Zamarripa-Castaneda was not at fault.

Moreover, the investigator stated that because "discovery provided is incomplete, so too will any review I may attempt to provide . . . be incomplete," *id.* at 47, and that "[t]here is an abundance of missing information in discovery presented for my review at this time," *id.* at 49. He also referred to his report as a "*preliminary memorandum.*" *Id.* at 46. The investigator's concession that his report was incomplete and preliminary further supports the Board's determination.

Finally, the investigator opined that there were flaws in the police report, but we agree with the Board that those flaws were minor. A handful of examples suffices to make the point. Although an officer stated that the two lanes collapsed into each other, the lane Zamarripa-Castaneda was traveling in was "better represented as an on

15

ramp." *Id.* at 47. A police diagram of the accident scene "contained no measurements and no specific area of collision." *Id.* at 48; *see also id.* at 50. The witnesses' identities were not "documented." *Id.* at 49; *see also id.* at 51. Officers did not recover a "flannel shirt" at Zamarripa-Castaneda's residence. *Id.* at 49. "It did not appear the driver airbag or the blood sample had been processed as evidence." *Id.* at 50. And Zamarripa-Castaneda should request "the final, correctly completed [accident] report, *id.* at 54, and reports from two of his "three blood draws," *id.* at 55. Alleged shortcomings like these do not render the Board's refusal to remand irrational.

### 2. Post-conclusion voluntary departure

Zamarripa-Castaneda argues that the Board erred in determining that he waived appellate review regarding post-conclusion voluntary departure because he did not request that relief before the IJ. He also faults the Board for failing to address his claim that the IJ erred in sua sponte deeming him statutorily ineligible for post-conclusion voluntary departure. These points are moot in light of the Board's alternative determination that Zamarripa-Castaneda had not shown "a likelihood that a discretionary grant of voluntary departure [was] warranted" because the negative factors were "very significant" and Zamarripa-Castaneda had "not presented countervailing positive equities that would support a discretionary grant of voluntary departure." *Id.* at 6. This alternative conclusion necessarily rested on the assumption

16

that Zamarripa-Castaneda was statutorily eligible for post-conclusion voluntary departure.[9]

Zamarripa-Castaneda also argues that the Board abused its discretion by deciding in the first instance that post-conclusion voluntary departure was not warranted. He asserts that remand for consideration by the IJ is the proper procedure. But voluntary departure is a privilege, and whether to grant it is left to the Attorney General's discretion, even when an alien is statutorily eligible for it. *Becerra-Jimenez v. INS*, 829 F.2d 996, 999 (10th Cir. 1987); *see also United States v. Almanza-Vigil*, 912 F.3d 1310, 1326 (10th Cir. 2019) (explaining that the discretionary aspect of whether to grant voluntary-departure requires the agency to "balance the applicant's positive equities . . . against negative factors"). As noted above, the Board has discretion to deny a motion to remand based on a determination that "the movant would not be entitled to the discretionary grant of relief." *Abudu*, 485 U.S. at 105. Therefore, in balancing the positive equities against the negative factors, the Board did not abuse its discretion in denying the motion to remand for consideration of post-conclusion voluntary departure.

---

[9] One of the statutory requirements for post-conclusion voluntary departure is that an "alien has been physically present in the United States for a period of at least one year immediately preceding the date the notice to appear was served." 8 U.S.C. § 1229c(b)(1)(A). The IJ appears to have relied on this provision in stating that "given that the NTA was filed March 26, 2018, I don't think he'd be eligible for post-conclusion [voluntary departure]." Admin. R., Vol. 1 at 246.

## III.  Conclusion

The petition for review is denied.

Entered for the Court


Timothy M. Tymkovich
Chief Judge